MARKWEST LIBERTY MIDSTREAM
& RESOURCES, LLC, Appellant

v.

CECIL TOWNSHIP ZONING HEAR-
ING BOARD Range Resources—
Appalachia, LLC, Appellant

v.

Cecil Township Zoning Hearing Board.

Commonwealth Court of Pennsylvania.

Argued Dec. 11, 2013.

Decided Sept. 26, 2014.

Reargument Denied Nov. 12, 2014.

550

Walter A. Bunt, Jr., Pittsburgh, for appellant MarkWest Liberty & Midstream Resources, LLC.

Patricia L. McGrail, McKeesport, for appellee Cecil Township Zoning Hearing Board.

John M. Smith, Canonsburg, for appellee Cecil Township.

Steven E. Gibbs, Pittsburgh, for intervenor Range Resources Appalachia, LLC.

BEFORE: ROBERT SIMPSON, Judge, and ANNE E. COVEY, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge COVEY.

MarkWest Liberty Midstream & Resources, LLC (MarkWest) and Range Resources—Appalachia, LLC (Range Resources) appeal from the Washington

County Common Pleas Court's (trial court) January 21, 2013 order affirming the Cecil Township (Township) Zoning Hearing Board's (Board) decision denying MarkWest's application for special exception and exclusionary zoning challenge. The issues for this Court's review are: (1) whether the Board erred or abused its discretion by denying MarkWest's special exception application; (2) whether the Township's Unified Development Ordinance (UDO),[1] as interpreted and applied by the Board, is unlawfully exclusionary of natural gas compressor stations; and (3) whether the Board erred or abused its discretion by finding that the Township's UDO is not preempted by state law to the extent it precludes operations ancillary to oil and natural gas well development.

MarkWest is a limited liability corporation that owns and operates midstream facilities which transport, compress and process oil, gas and other substances extracted from oil and gas wells. MarkWest operates gas compressor stations in Washington County, Pennsylvania.[2] After consulting with the Township and its Solicitor about building a natural gas compressor station in the Township, MarkWest received a positive response. Section 2 of Township Ordinance No. 2–2010 permits natural gas compressor stations that oper-

ate as midstream facilities so long as they are consistent with the Township's UDO which allows them by special exception.[3] *See* Reproduced Record (R.R.) at 1457a. On September 20, 2010, MarkWest executed an agreement to purchase a 71.5–acre undeveloped parcel of land (Property) from Richard Caruso located in the Township's I–1 Light Industrial District.

On November 29, 2010, MarkWest applied to the Board for a special exception under Section 911.D.1 of the Township's UDO to construct and operate a natural gas compressor station roughly in the center 15 acres of the Property. The proposed facility would consist of up to 8 engines and surrounding sound structures, dehydration facilities, tanks, a vapor recovery unit, a flare and associated piping (Proposed Facility). The Property is adjacent to R–1 Low Density and R–2 Medium Density Residential Districts, but no residence would be closer than 1,000 feet from the Proposed Facility. Board hearings were held on January 17, January 31 and February 21, 2011.

On March 31, 2011, the Board denied MarkWest's special exception application on the basis that MarkWest failed to satisfy the UDO's requirements that the

---

1. No. 5–00, May 17, 2000 (*as amended* October 8, 2007).

2. MarkWest operates midstream between the product producer and the end user. Reproduced Record (R.R.) at 59a. It does not drill or frac, but rather gathers, processes and moves "rich gas" (which has a higher hydrocarbon content than dry gas) to market. R.R. at 55a, 59a. At the Township property on which MarkWest applied to operate a compressor station, the gas will be drawn in from wells, water will be removed, and the compressed gas will be transported through pipelines to MarkWest's Houston processing facility, where hydrocarbon liquids will be removed (thereby producing propane and butane which have numerous industrial uses),

and processed gas will be supplied to consumers. R.R. at 55a–56a, 59a–60a.

3. "Natural gas compressor station" is defined by Township Ordinance 2–2010 as

[a] facility designed and constructed to compress natural gas that originates from an Oil and Gas well or a collection of wells operating as a midstream facility for delivery of Oil and Gas to a transmission pipeline, distribution pipeline, Natural Gas Processing Plant or underground storage field, including one or more natural gas compressors, associated buildings, pipes, valves, tanks and other equipment.

R.R. at 1457a.

Proposed Facility would be of the same general character as other uses permitted in an I–1 Light Industrial District, and that its impact would be equal to or less than other permitted uses.[4] On April 21, 2011, MarkWest appealed to the trial court from the Board's special exception application denial and exclusionary zoning challenge deemed denied. On May 20, 2011, Range Resources intervened as an owner or tenant of the Property on which the Proposed Facility would be constructed. The Township intervened on June 13, 2011.[5] On January 21, 2013, the trial court, without taking additional evidence, affirmed the Board's decision. MarkWest (223 C.D. 2013) and Range Resources (232 C.D. 2013) appealed to this Court.[6] This Court consolidated the appeals on August 14, 2013.

### 1. *Special Exception*

■■■ "A special exception is a use that is expressly permitted by the zoning ordinance, absent a showing of a detrimental effect on the community." *Morrell v. Zoning Hearing Bd. of the Borough of Shrewsbury,* 17 A.3d 972, 975 (Pa.Cmwlth.2011);

see also *Freedom Healthcare Servs., Inc. v. Zoning Hearing Bd. of the City of New Castle,* 983 A.2d 1286 (Pa.Cmwlth.2009).

The applicant for the proposed use has both the duty to present evidence and the burden of persuading the [B]oard that the proposed use satisfies the objective requirements of the ordinance.... Once the applicant meets these burdens, a presumption arises that the use is consistent with the health, safety and general welfare of the community. The burden then normally shifts to the objectors of the application to present evidence and persuade the Board that the proposed use will have a generally detrimental effect.

*Greaton Props. v. Lower Merion Twp.,* 796 A.2d 1038, 1045–46 (Pa.Cmwlth.2002); *see also Morrell.*

MarkWest and Range Resources[7] first argue that the Board erred or that the Proposed Facility is of the same general character as an "essential service" and permitted manufacturing uses in the Township's industrial district; it met the standards in the UDO for permitted uses in an I–1 Light Industrial District; and

---

**4.** At the time of the decision, the Board consisted of: Chairman George Augustine, Frank Zuzek, Richard Berteotti and Anthony Menosky. Only Chairman Augustine and Member Zuzek voted to deny MarkWest's application. Members Berteotti and Menosky were marked "Not Participating." Board Op. at 15.

**5.** On September 9, 2011, Marcellus Shale Coalition filed an amicus curiae brief with the trial court.

**6.** "When, as here, the trial court accepts no additional evidence in a zoning appeal, our review is limited to considering whether the zoning hearing board erred as a matter of law or abused its discretion." *S. of S. St. Neighborhood Ass'n v. Phila. Zoning Bd. of Adjustment,* 54 A.3d 115, 119 n. 1 (Pa.Cmwlth. 2012). "An abuse of discretion occurs when the findings of the Board are not supported by substantial evidence. Substantial evidence

means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Catholic Soc. Servs. Hous. Corp. v. Zoning Hearing Bd. of Edwardsville Borough,* 18 A.3d 404, 407 n. 2 (Pa.Cmwlth.2011) (citation and quotation marks omitted).

The trial court filed its Pa.R.A.P.1925(a) opinion on July 31, 2013.

**7.** In its brief, Range Resources stated that it "adopts MarkWest's brief in its entirety." Range Resources Br. at 1–2. Range Resources included an issue not set forth in MarkWest's brief. Because Range Resources provided no argument or legal authority therefor, the additional issue is waived and this Court need not address it. *Commonwealth v. Spotz,* 610 Pa. 17, 18 A.3d 244 (2011); *Eckman v. Erie Ins. Exchange,* 21 A.3d 1203 (Pa.Super.2011).

the UDO does not require it to submit studies or reports to demonstrate that the Proposed Facility would have less of an impact than other permitted uses.

MarkWest applied for a special exception under Section 911.D.1 of the UDO (Comparable Uses Which Are Not Specifically Listed). Pursuant to Section 404.B.1 of the UDO, the Board may approve a special exception for the Proposed Facility in the Township's I–1 Light Industrial District, **if the Proposed Facility: (1) would have an equal or lesser impact than,** *and* **is of the same general character as any of the Township's permitted** conditional uses (Section 911.C)[8] or **uses by right (Section 911.B);**[9] (2) meets the Township's area and bulk requirements;[10] (3) complies with the express standards and criteria specified for the most nearly comparable I–1 Light Industrial District use; and, (4) is consistent with the intent set forth in UDO Section 910 for industrial districts. R.R. at 232a–233a, 1180a–1181a, 1396a–1399a.

The narrative of MarkWest's special exception application specifies, in pertinent part:

8. MarkWest does not maintain that its Proposed Facility is comparable to any of the "Conditional Use[s]" listed under UDO Section 911.C.

9. Section 911.B of the UDO specifies that the "Use[s] by Right" permitted in the Township's I–1 Light Industrial District include: 1. Assembly/packaging of finished goods; 2. Automotive Repair Garage; 3. Contractor's Office/Yard; 4. Distribution Business (not including Truck Terminal); 5. Laboratory; 6. Manufacturing of furniture, medical equipment, musical instruments, and scientific instruments; 7. Manufacture, compounding, processing, or treatment of such products as: bakery goods, confections, cosmetics, dairy products, drugs, perfumes, pharmaceuticals, and toiletries; 8. Manufacture, compounding, assembling, or treatment of articles of mer-

6. **The [Proposed Facility] is of the same general character as an 'Essential Service',** a use permitted by right in the I–1 Light Industrial District under § 911.B.14 [of the UDO]. Although MarkWest is not a governmental entity and is not a public utility under the jurisdiction of the Pennsylvania Public Utility Commission, the physical nature of its facilities, consisting of the construction and operation of gas distribution facilities, is of the same general character as other uses falling within the definition of Essential Service. See [UDO] § 202. MarkWest's operations are critical to the downstream supply of gas to consumers; and the Compressor Station is necessary for the health, safety, and general welfare of the community. Accordingly, the [Proposed Facility] qualifies as a comparable use which is not specifically listed, a use by special exception in the I–1 Light Industrial District pursuant to § 911.D.1 of the [UDO].

7. **In the alternative,** if the [Board] determines that the [Proposed Facility] is not of the same general Character as an Essential Service use, then **it would be** considered as being **of the same general character as the manufactur-**

chandise from the following previously prepared materials: bone, concrete products, cellophane, canvas, hair, horn, leather, paper and paper board, plastic, precious or semiprecious metals or stones, marble, metals, shell, straw, textiles, wood, yarn, or paint; 9. Printing Service; 10. Research Activity; 11. Indoor Storage Warehousing; 12. Indoor Wholesale Trade; 13. Business and Professional Office; 14. **Essential Service;** 15. Farm; and, 16. Accessory Uses, including restaurant or cafeteria facilities for employees only; outdoor private swimming pools and tennis courts; antenna and satellite dishes; and accessory buildings. R.R. at 238a, 1286a (emphasis added).

10. The Proposed Facility's compliance with the UDO's area and bulk regulations (Section 911.E and F) is not disputed.

ing uses that are permitted by right in the I–1 Light Industrial District under the [UDO]. As such, the [Proposed Facility] similarly would qualify as a comparable use which is not specifically listed, a use by special exception in the I–1 Light Industrial District pursuant to § 911.D.1 of the [UDO].

R.R. at 199a (emphasis added).

Section 911.D.1.a of the UDO tasks the Board with first determining whether the impact of the Proposed Facility would be equal to or less than any use specifically listed in the I–1 Light Industrial District and, thereafter, assessing whether the Proposed Facility would be of the same general character as any use permitted by right or listed as a conditional use in that District.

■■■ In reviewing the Board's decision, we initially acknowledge:

[T]his Court may not substitute its interpretation of the evidence for that of the Board, the fact-finder in this case. The Board is the sole judge of the credibility of witnesses and the weight to be afforded their testimony. Thus, it is the Board's function to weigh the evidence before it. **If the record contains substantial evidence, this Court is bound by the Board's findings** that result from the resolution of credibility and conflicting testimony.

*Oxford Corp. v. Zoning Hearing Bd. of the Borough of Oxford,* 34 A.3d 286, 295 n. 9 (Pa.Cmwlth.2011) (citations omitted; emphasis added). Further,

[i]t is a fundamental principle of administrative law that an administrative agency's interpretation of the statute it is charged to administer is entitled to deference on appellate review absent 'fraud, bad faith, abuse of discretion, or clearly arbitrary action.' *Winslow–*

*Quattlebaum v. Maryland Insurance Group,* 561 Pa. 629, 752 A.2d 878, 881 (2000). Our Supreme Court has stated:

It is well settled that when the courts of this Commonwealth are faced with interpreting statutory language, they afford great deference to the interpretation rendered by the administrative agency overseeing the implementation of such legislation.

*Id.* at 881.

*Turchi v. Phila. Bd. of License & Inspection Review,* 20 A.3d 586, 591 (Pa.Cmwlth. 2011).[11] Finally, "ordinances are to be construed expansively, affording the landowner the broadest possible use and enjoyment of his land." *Tink–Wig Mountain Lake Forest Prop. Owners Ass'n v. Lackawaxen Twp. Zoning Hearing Bd.,* 986 A.2d 935, 941 (Pa.Cmwlth.2009).

■■■ The Pennsylvania Supreme Court has made clear that "the authority of a zoning board to act arises exclusively from the ordinance and the enabling statute and the language of both demarcates [its] jurisdiction...." *Norate Corp. v. Zoning Bd. of Adjustment of Upper Moreland Twp.,* 417 Pa. 397, 207 A.2d 890, 893–94 (1965). Moreover,

a zoning board is not a legislative body, and it **lacks authority to modify or amend the terms of a zoning ordinance.** '[Z]oning boards ... must not impose their concept of what the zoning ordinance should be, but rather their function is only to enforce the zoning ordinance in accordance with the applicable law.' Thus, the **Board is required to apply the terms of the Zoning Ordinance as written** rather than deviating from those terms based on an unexpressed policy.

*Greth Dev. Grp., Inc. v. Zoning Hearing Bd. of Lower Heidelberg Twp.,* 918 A.2d

---

11. This principle also applies to local administrative agencies like the Board. *Turchi.*

181, 187 (Pa.Cmwlth.2007) (citation omitted; emphasis added) (quoting *Ludwig v. Zoning Hearing Bd. of Earl Twp.*, 658 A.2d 836, 838 (Pa.Cmwlth.1995)).

The Board made 22 Conclusions of Law (Conclusions). The Board's first legal conclusion acknowledged that the UDO governs the requirements to be considered relative to MarkWest's special exception application. Board Conclusions 2 through 8 are direct quotes of specific ordinance provisions.

Board Conclusions 9 through 21 are discussed under the heading: *"The Proposed Facility, when measured by the requirements of the UDO, including Parts 4, 9 and 16 where applicable, is not of [the] same general character as an essential service."* Conclusion 9 quotes the UDO definition of "essential service," as follows:

> The erection, construction, alteration, or maintenance, of gas, electrical, and communication facilities; steam, fuel, or water transmission or distribution systems; and collection, supply, or disposal systems. Such systems may include poles, wires, mains, drains, sewers, pipes, sewage treatment plants, conduits, cables, fire alarm and police call boxes, traffic signals, hydrants, and similar accessories. This definition is not intended to include private commercial enterprises such as cellular communications facilities, but only those public facilities necessary for the health, safety, and general welfare of the community.

R.R. at 230a, 1152a.

The Board held in Conclusion 10: "MarkWest is a commercial enterprise which is in the business of providing services for the midstream treatment of natural gas for profit and[,] as such, is neither a public utility nor does it provide a service essential to the public as defined." Board Op. at 12. MarkWest admits it is a commercial enterprise and not a public utility.[12] The remainder of Conclusion 10, that MarkWest does not "provide a service essential to the public as defined," will be addressed below in conjunction with Conclusion 13. Board Op. at 12.

Board Conclusion 11 reads, in pertinent part: "The proposed use by MarkWest is more comparable to cellular communication facilities which are expressly excluded from the definition." Board Op. at 12. The Board made no specific finding upon which to conclude that MarkWest's proposed use "is more comparable to cellular communication facilities." Board Op. at 12. The record is devoid of any evidence to substantiate this legal conclusion.

Moreover, Section 2 of Township Ordinance 2–2010, enacted March 22, 2010,[13] defines a "natural gas compressor station."[14] R.R. at 1457a. Thus, the Board's conclusion that a natural gas compressor station is excluded from the definition of essential service based on the exclusion of "cellular communication facilities" when both are defined in the ordinance and only one is specifically excluded in the definition of essential service "would conflict with and make superfluous the language of that Section that specifically excludes" the cellular communications facilities. *Latimore Twp. v. La-*

---

**12.** MarkWest representatives made clear that it is not a regulated public utility. R.R. at 44a, 199a, 998a–999a, 416a–417a.

**13.** Ordinance 2–2010 was in effect when MarkWest filed its special exception application on November 29, 2010.

**14.** *See* UDO definition of natural gas compressor station, *supra* note 3.

*timore Twp. Zoning Hearing Bd.*, 58 A.3d 883, 887 (Pa.Cmwlth.2013). "A zoning ordinance should be construed so that none of its language is superfluous. In addition, in resolving a conflict between provisions in a zoning ordinance, the more specific provisions control over the more general ones." *Id.* (citation omitted). The exclusion of the cellular communication facilities, as the more specific provision, must therefore control and the Board's conclusion that a natural gas compressor station is "more comparable to cellular communication facilities" is legal error. Board Op. at 12.

■ The Board in concluding that a natural gas compressor station was comparable to "cellular communication facilities" when the UDO expressly defines that term highlights the Board's unreasonable interpretation and application of the ordinance. The UDO defines "communications facility" as "[a]ny communications antenna or communications tower ... which is operated by any ... corporation...." R.R. at 1133a. "Communications antenna" is defined as "[a]ny structure designed for transmitting or receiving radio, television, or telephone communications[.]" R.R. at 1133a. The UDO also specifically defines "communications tower" as "[a] ny structure ... designed to support multiple communications antennae ... and one or more of the following mounts for antennae: rotatable platform, fixed platform, multipoint side arm and pipe mounts for microwave dishes." R.R. at 1133a. "In reading the plain language of a statute, '[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage.' 1 Pa.C.S. § 1903(a)." *Tri–County Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 509 (Pa.Cmwlth.2014). "Further, '[w]hile it is true that zoning ordinances are to be liberally construed to allow the broadest possible use of land, it is also true that zoning ordinances are to be construed in accordance with the plain and ordinary meaning of their words.' *Zappala Grp., Inc. v. Zoning Hearing Bd. of Town of McCandless*, 810 A.2d 708, 710 (Pa. Cmwlth.2002)." *Id.* at 510. The plain readings of the UDO definitions of "natural gas compression station" and "communication facility" are in no manner even remotely similar.

In addition, there is no record evidence from which one could possibly conclude that the two distinct operations with completely different purposes are somehow "comparable." Given the absence of a specific finding upon which to conclude that MarkWest's proposed use of the Property "is more comparable to [a] cellular communication facilit[y]," and the Board's unreasonable interpretation and application of the UDO, we hold that Conclusion 11 is without basis in fact or law.

■ The Board ruled in Conclusion 12: **"While the primary purpose of the Proposed Facility is the collection and transmission of natural gas,** it is not of the same character as the collection or transmission of natural gas directly to the end user **which would be an essential service as defined by the UDO."** Board Op. at 12 (emphasis added). Thus, the Board determined that the Proposed Facility's primary purpose of collecting and transmitting natural gas is an essential service within the UDO definition. The Board went on to conclude that because the gas was not transmitted "directly to the end user," the Proposed Facility was not an essential service as defined by the UDO. However, the UDO's definition of "essential service" **does not** require MarkWest or other applicant to "transmi[t] ... natural gas directly to the end user." Board Op. at 12. Instead, the UDO mandates that the public facility be "necessary

for the health, safety, and general welfare of the community."[15] R.R. at 230a. "Where a particular use is permitted in a zone by special exception, it is presumed that the local legislature has already considered that such use satisfies local concerns for the general health, safety, and welfare and that such use comports with the intent of the zoning ordinance." *In re Brickstone Realty Corp.,* 789 A.2d 333, 340 (Pa.Cmwlth.2001).

Further, the Board's legal standard in Conclusion 12 that the proposed use must be of the "same character" is simply wrong. Board Op. at 12. Section 911.-D.1.a of the UDO is clear that the proposed use is to be of the "same *general* character." We must refer to the plain meaning of the term "general." *Zappala Grp., Inc. Merriam–Webster's Collegiate Dictionary* (11th ed. 2004) defines "general" as "concerned or dealing with universal rather than particular aspects[;] . . . relating to, determined by, or concerned with main elements rather than limited details." *Id.* at 520. Thus, the UDO does not require the Proposed Facility to have the "same character," but rather a similarity to other uses permitted by right in the Township. MarkWest's counsel declared to the Board that MarkWest is not an essential service, but is comparable to an essential service. R.R. at 99a–101a. Accordingly, the Board erred as a matter of law by imposing a requirement not contained in the UDO, as well as a higher standard that the facilities must be the

"same." The additional requirement and higher standard contained in Conclusion 12 must fail.

Board Conclusion 13 provides:

Where an ordinance provides a definition of an "Essential Service" that excludes commercial businesses, a special exception cannot be granted to a commercial business that proposes a use of the same general character as an Essential Service. *Grant v. Zoning Hearing Bd. of the Twp. of Penn,* 776 A.2d 356 (Pa.Cmwlth.2001).

Board Op. at 12. In Conclusion 14 the Board stated: "The definition of Essential Service under the UDO is not ambiguous and applies to uses that are necessary for the health, safety and welfare of the general community."[16] Board Op. at 12.

First, the UDO's definition of "essential service" does not require that a comparable entity must be a "public utility" as the Board ruled in Conclusion 10. Rather, the UDO defines "essential service" to include gas facilities that are **"public facilities necessary for the health, safety, and general welfare of the community."** R.R. at 230a (emphasis added). **"Public utility"** is defined in the UDO as "[a]ny . . . **corporation** duly authorized to furnish . . . gas . . . service to the public **under public regulation."** R.R. at 1148a (emphasis added). The UDO defines "public service facility" as:[17]

Buildings, power plants or substations, water treatment plants or pumping sta-

---

15. MarkWest acknowledged that it will not be supplying gas directly to Township residents. R.R. at 417a. MarkWest representatives stated that although the Proposed Facility does not directly serve the Township's residents, the residents will benefit (like other compressor site communities) by the property taxes and permit fees MarkWest will pay, and also from increased local business for gas stations, restaurants, subcontractors and parts suppliers. R.R. at 855a–856a, 893a–894a, 937a.

16. We discern no error in Board Conclusion 14.

17. We acknowledge that the UDO's definition of "essential service" refers to "public facilit[y]" as opposed to "public *service* facility," but in making a general character comparison, we find the definition of "public service facility" instructive.

tions, sewage disposal or pumping plants, and other similar public service structures used by a **public utility ...**, **whether publicly or privately owned,** or by a municipal or other government agency, including the furnishing of ... gas ... services.

R.R. at 1148a (emphasis added). Thus, even if an essential service must be provided by a public utility, the UDO does not limit public utilities to those that are publicly owned.

Second, contrary to the Board's interpretation as stated in Conclusion 13, the *Grant* Court did not hold that "[w]here an ordinance provides a definition of an 'Essential Service' that excludes commercial businesses, a special exception cannot be granted to a commercial business that proposes a use of the **same general character as an Essential Service.**" Board Op. at 12 (emphasis added). In *Grant*, the Court determined that the proposed electric generating facility was not an essential service because the ordinance therein required that essential services be "provided by a public utility[.]" *Grant*, 776 A.2d at 360. The Court then addressed the issue of "whether the electric generating facility [was] of **the same general character as an essential service.**" *Id.* at 360–61 (emphasis added). In deciding that question, the Court made no distinction between public and private ownership. *See id.*

In *Polay v. Board of Supervisors of West Vincent Township*, 752 A.2d 434 (Pa. Cmwlth.2000), this Court noted:

> At oral argument, the Polays cited *Hernley Family Trust v. Fayette County Zoning Hearing Board*, 722 A.2d 1115 (Pa.Cmwlth.1998), *appeal denied*, 560 Pa. 712, 743 A.2d 924 (1999), to support their position. In that case, this court held that, in order to receive a special exception under the local zoning ordinance to construct and operate a

natural gas compressor as a 'public service facility,' the landowner must be a 'public utility.' This was because the definition of 'public service facility' set forth in the local zoning ordinance stated clearly that the landowner must be a 'utility.' Here, however, the Ordinance does not require a particular type of landowner; rather it requires only that the landowner's 'use' be 'similar to' a public utility operating facility.

*Id.* at 436 n. 4. Correspondingly, in the instant case, the issue is not whether MarkWest's proposed use is an essential service, but rather whether MarkWest's proposed use is of the same general character as any essential service. Accordingly, MarkWest's commercial nature does not preclude it from providing an "essential service" as that term is defined in the UDO. Therefore, the remainder of Board Conclusion 10 discussed above and Conclusion 13 were in error and cannot stand.

The Board's Conclusion 15 reads: "The Proposed Facility would have a greater impact in an adverse way upon the environment than an Essential Service and is not of the same character as those uses permitted by right in the I–1 District under Section 9[1]1.B. of the UDO." Board Op. at 13. MarkWest's environmental manager Robert E. McHale, P.G. (McHale) described that MarkWest will take gas in at the Proposed Facility, compress it and then send it to Houston where it must undergo additional processing before its distribution to customers' homes. R.R. at 59a–60a. The Board made no finding upon which to conclude that "[t]he Proposed Facility would have a greater impact in an adverse way upon the environment than an Essential Service." Board Op. at 13. Nor did the Board make any finding that the Proposed Facility "is not of the same character as those uses permitted by right in the I–1 District." Board Op. at

13. Further, the Board's statement that the Proposed Facility is not "of the same character" as other uses permitted by right is the wrong legal standard. The UDO expressly states that a proposed use must be of "the same *general* character." For the reasons discussed above, such a distinction is important. Accordingly, Conclusion 15 is without basis in fact or law.

Board Conclusion 16 provides: "The Proposed Facility would cause certain carcinogenic materials and other hazards to be expelled into the air, creating a greater hazard than the emissions from the manufacturing uses permitted by right in the I-1 District." Board Op. at 13. The Board made no comparison of the Proposed Facility to permitted manufacturing uses. Moreover, the Board specifically found that MarkWest will obtain minor air permits from the Pennsylvania Department of Environmental Protection (DEP) and minor source pollution permits from the Commonwealth (Findings of Fact (FOF) 22–23, 74); that it will use state-of-the-art combustion engines which generate emissions substantially lower than the DEP minor emissions permit allows (FOF 73–74); that flares will burn the volatile organic compounds (VOCs) (FOF 27) and vapor recovery units (VRUs) will capture 98% of emissions (FOF 20); that based upon its pollutant levels MarkWest need not submit a toxic release inventory to the Environmental Protection Agency (EPA) (FOF 21); and, that MarkWest produced documentation that a similar compressor station was deemed by the DEP unlikely to trigger air-related health issues (FOF 76). Because Conclusion 16 is contrary to the Board's own factual findings and those findings are based on substantial evidence, it must also fail.

Board Conclusion 17 states:

MarkWest's application for special exception fails as a matter of law since neither its written application nor its presentation to the Board at the time of the public hearings contained any documentation or expert reports demonstrating compliance with the requirement that ... its proposed use is of the same general character as uses permitted by right in the I-1 Light Industrial District.

Board Op. at 13. The requirement that MarkWest was legally obligated to produce expert testimony, reports or studies about its proposed operation and that it was mandated to compare its proposed use to the Township's other permitted uses is not supported by the UDO or case law. The UDO **does not require** I-1 Light Industrial District special exception applicants to produce any of this information, and the Board cited no UDO provision for its ruling.

The Board relied upon this Court's decision in *Edgmont Township v. Springton Lake Montessori School, Inc.*, 154 Pa. Cmwlth. 76, 622 A.2d 418 (1993) to support its Conclusion. However, while *Edgmont Township* illustrates that a special exception applicant must show at the hearing that it meets the ordinance's requirements (and cannot cure an insufficiency with a promise of future compliance), it does not support the Board's holding that MarkWest was required by the UDO to produce expert reports and comparative documentation. Certainly, MarkWest has the initial burden of demonstrating compliance with the specific objective requirements for a special exception which here are set forth in Sections 404.B.1 and 911 of the UDO. *Greaton Props.* Nevertheless, without a specific mandate in the UDO, MarkWest was not on notice to supply any additional evidence. Thus, there is no authority for the Board's mandate or legal

conclusions, and the Board erred in its Conclusion 17.[18]

Board Conclusion 18 reads:

> MarkWest's application did not meet the requirements of Part 16, Section 1602.A that provides that:
>
> > Excessive noise shall be required to be muffled so as not to be objectionable to surrounding property owners due to intermittence, beat frequency, shrillness, or volume.
>
> MarkWest's application did not include any noise or sound studies and the testimony offered at the hearing confirmed that there was no ambient noise study done at the Property. (Tr. 87).

Board Op. at 13. Although the Board determined that because MarkWest did not produce "noise or sound studies," it failed to meet the UDO requirements concerning excessive noise, the Board cited no UDO provision to support its mandate. In fact, the UDO contains no such requirement. Moreover, the Board's findings conflict with Conclusion 18. The Board specifically found that the Proposed Facility will have a noise level no greater than 60dbA at its property line which MarkWest will achieve by maintaining setbacks, creating sound-deadening structures, and using silencers on vent fans. FOF 14, 77 and 78. The Board also acknowledged that neighbors of and visitors to another MarkWest compressor station site have found the noise level acceptable. FOF 78. Because Board Conclusion 18 is

not supported in law or fact, it cannot stand.

Board Conclusion 19 provides:

> MarkWest's application did not meet the requirements of Part 16, Section 1605 [of the UDO] that provides that:
>
> > For purposes of this Section, the 'odor threshold' is defined as the minimum concentration in the air of a gas, vapor, or particulate matter that can be detected by the olfactory system of a panel of healthy observers. No use in any district, except where fertilizer is used as part of a permitted agricultural use, may generate an odor[ ] which is objectionable[ ] or noxious that reaches beyond the property line of the enterprise generating the odor.
>
> Neither MarkWest's application nor its testimony at the time of the hearings provide any empirical data or expert report with regard to odor that would be produced by the Proposed Facility. (Tr. 108).

Board Op. at 13. This Conclusion is premised solely on MarkWest's failure to furnish "empirical data or expert report with regard to odor." Board Op. at 13. Like Conclusion 18, the Board cited no authority for this Conclusion, and the UDO imposes no such requirement. Conclusion 19 also conflicts with the Board's specific findings that odors from the Proposed Facility would be contained through the use of VRUs. FOF 20, 77. Therefore, this legal conclusion fails.

Board Conclusion 20 states:

> Board repeatedly stated that MarkWest failed to supply comparative evidence (FOF 16, 43; Conclusions 22a-d), yet without such evidence still held that "[t]he Proposed Facility would have a greater impact in an adverse way upon the environment than ... uses permitted by right in the I–1 District...." Board Conclusion 15, Board Op. at 13.

---

18. The lack of any requirement in the UDO for applicants to make documented comparisons between their proposed facilities and the Township's other permitted uses is reasonable in that an applicant's evidence consisting solely of its proposed operation is sufficient to satisfy the applicant's burden since the Board, which is familiar with current uses within its borders, is able to make a comparison. The

MarkWest's application did not meet the requirement of Part 16, [Section] 1604 [of the UDO] dealing with Smoke and Particulate Matter as follows:

> The emission of smoke or particulate matter in such manner or quantity as to endanger or to be detrimental to the public health, safety, comfort, or welfare, is not permitted.

MarkWest's acknowledgment at the time of the hearing that there would be certain airborne hazardous emissions at the site was not rebutted by their production of any studies or expert report indicating that these pollutants would not be harmful to nearby residents.

Board Op. at 13–14. Again, Board Conclusion 20 is premised on the required production of "studies or expert reports." In addition to the Board citing no authority for this Conclusion and the UDO not requiring studies or expert reports, for the reasons this Court discussed in regard to Board Conclusions 17–19, this Conclusion is contrary to the Board's factual findings and is without legal basis. Moreover, the Board erred by imposing an additional legal standard upon MarkWest by requiring MarkWest to "rebut" its own evidence.

Board Conclusion 21 reads: "MarkWest's application did not meet the requirements established in Part 16 [of the UDO], Liquid and Solid Waste Disposal in that neither the application nor the testimony documented the effect of the Proposed Facility on the groundwater in the Township." Board Op. at 14. This Conclusion is without support. Section 1608 of the UDO prohibits discharge of any materials that could contaminate the sewer system, streams or the ground, except in accordance with DEP standards. R.R. at 1397a. The Board made no finding on this topic and, in fact, capriciously disregarded the undisputed record evidence that MarkWest expressly committed to "absolutely"

comply with the UDO Part 16 requirements (R.R. at 93a–94a); that it will comply with soil and water regulations (R.R. at 82a); that it will implement soil protection controls and provide secondary containment even though it is not required (R.R. at 82a); that condensate from compression is considered residential (rather than environmental) waste which will be removed and disposed of in Ohio by licensed haulers (R.R. at 394a); that its operations are not continuously monitored by the EPA or DEP because it has not been necessary (R.R. at 975a–976a); and, that if or when the EPA changes its standards, MarkWest will meet the new standards (R.R. at 455a). Accordingly, Conclusion 21 must fail.

The Board's final Conclusion 22 is set forth under a section entitled *"The UDO, Section 911(D)(1)(a) requires a party that seeks a special exception to establish that the proposed use would impact neighboring properties in a manner that was equal to or less than the impact of permitted uses in the [I–1] Light Industrial District"* and reads:

MarkWest **failed to meet [its] burden** as follows:

a. MarkWest failed to meet this requirement by providing **no rebuttal** to **testimony** from residents with regard to its **impact on real estate values.** MarkWest **produced no** evidence of a **study detailing the impact of a similar facility on property values** or similar impact on values that a permitted use in an I–1 Light Industrial District would have.

b. MarkWest **failed to show similarities in noise, odor or air emissions between the Proposed Facility and any of the Uses by Right** (Part 9, Section 911, B) or the Conditional Uses (Part 9, Section 911, C) of the UDO.

c. MarkWest **failed to produce** any documentation **reports or studies** that demonstrate that the **Proposed Facility**

would have **no greater impact on neighboring properties as would permitted uses** in a I–1 District.

d. MarkWest **failed to show** that the **Proposed Facility** was of the **same general character and** would **involve processes equivalent to the processes permitted** in a I–1 District. The only comparison, if it could be characterized as such was found at [N.T. 96a] when a representative of MarkWest stated that he would 'rather be around a compressor station than a Bristol Meyers Squibb factory.'

Board Op. at 14 (emphasis added).

The Board erred by denying MarkWest's special exception application on the basis that MarkWest failed to make community impact comparisons between the Proposed Facility's operation and that of other uses permitted in the I–1 Light Industrial District. As discussed above, the UDO does not charge MarkWest or other applicant with that burden of proof. The Board further erred by mandating evidence of property values when the UDO has no requirement that the applicant prove the "impact on real estate values" or present "evidence of a study detailing the impact of a similar facility on property values." Board Op. at 13. Moreover, the UDO contains no requirement that MarkWest or other applicant produce such studies, or that real estate values must be considered by the Board when evaluating special exception applications in the Township's I–1 Light Industrial District. *See* Sections 404, 910, 911 of the UDO; R.R. at 1180a–1181a, 1285a–1286a. Further, MarkWest representative, Christopher Rimkus (Rimkus) stated: "[W]hat we're putting in there will make no greater difference to your property value than anything else that you put in there would." R.R. at 876a. Rimkus also testified that property values could rise with gas and mineral estates. R.R. at 156a–158a, 429a.

It is undisputed that although MarkWest did not supply comparative reports relative to the Township's other permitted uses, MarkWest indeed provided specific evidence about its proposed use and the Board made express findings about the Proposed Facility's impact. Nothing in the UDO mandated MarkWest to produce expert testimony, empirical data, studies or reports for its operations **and** the operations of the Township's other permitted uses. Nor does the UDO require MarkWest to produce comparison studies of every other permitted use in the I–1 Light Industrial District. The UDO's silence cannot be converted into a mandate because there exists no guidance as to whether a comparison is to be made only for those uses currently employed within that District, all the permitted uses listed, a select few of either or just one.[19] The

---

19. Section 911.D.1.a specifies that the proposed use shall be "equal to or less than *any* use specifically listed in the district." R.R. at 239a, 1287a (emphasis added). *Merriam–Webster's Collegiate Dictionary* defines the term "any" as "one or some indiscriminately of whatever kind." *Id.* at 56. However, this Court has held that "absent express limitation, permissive phrases in zoning ordinances [such as 'any'] are given their broadest meaning, and any ambiguities are resolved in favor of the landowner." *Gilbert v. Montgomery Twp. Zoning Hearing Bd.*, 58 Pa.Cmwlth. 296, 427 A.2d 776, 780 (1981) (citations omitted).

Based upon the Board's ruling, in order to meet the requirements for a special exception, MarkWest had to supply studies or reports and expert testimony comparing the Proposed Facility's noise, odor and air emissions, and traffic and real estate impacts to each and every one of the 16 uses (and their subcategories) specifically listed in Section 911.B of the UDO (R.R. at 238a, 1286a), plus each of the 15 conditional uses specifically listed in Section 911.C of the UDO (R.R. at 239a, 1287a). Such an interpretation is unreasonable and contrary to established case law on statutory and ordinance construction.

Board's denial of MarkWest's application on these bases constituted an error of law. Although the Board's interpretation of the UDO is entitled to deference, based upon this record we conclude that the Board acted arbitrarily and abused its discretion by mandating requirements not set forth in the UDO. Because the Board's Conclusions are not supported by the law or the record evidence, they cannot form the basis for the Board's denial of MarkWest's special exception application.

 In light of the Board's Conclusions being contrary to the evidence and the law, we will review the Board's findings and the record evidence to determine if MarkWest satisfied the objective requirements of the UDO for receiving a special exception. Section 303 of the UDO states that "[t]he Board shall have all the powers and duties prescribed by the Pennsylvania Municipalities Planning Code [ (MPC)[20]], including hearing of . . . Spe-

cial Exceptions. . . ." R.R. at 1162. Section 404.B of the UDO states likewise. R.R. at 232a, 1180a. Section 912.1 of the MPC[21] provides, in pertinent part: "Where the governing body, in the zoning ordinance, has stated special exceptions to be granted or denied by the board pursuant to express standards and criteria, **the [B]oard shall hear and decide requests for such special exceptions in accordance with such standards and criteria. . . .**" 53 P.S. § 10912.1 (emphasis added). In conducting our review, we will first address each subsection of Section 404.B.1 of the UDO, which sets forth the factors the Board must consider when reviewing applications for special exceptions.

Section 404.B.1.a of the UDO requires that "[s]uch use shall comply with the Land Use Plan Goals and Objectives contained in the Comprehensive Plan of the Township and the statement of intent for the district in which it is to be located.[22]"

---

**20.** Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202.

**21.** Added by Section 91 of the Act of December 21, 1988, P.L. 1329.

**22.** Section 910 of the UDO's general statement of intent for the Township's industrial districts provides:

In addition to the general goals listed in Part 1 of this Chapter and in the Land Use Plan Goals and Objectives of the Comprehensive Plan, the districts established in these regulations are intended to achieve the following:
A. To provide sufficient space, in appropriate locations, to meet the anticipated future needs for industrial activity with due allowance for the needs of a range in choice of sites.
B. To ensure that the land most suited for industrial and related activities will be available by prohibiting the use of such land for new residential development and, at the same time, to protect residences by separating them from such activities.
C. To protect industry against congestion by limiting the bulk of buildings in relation

to the land around them and to one another, and by providing sufficient off-street parking and loading facilities for such developments.
D. To promote the most desirable use of land and direction of building development in accordance with the Comprehensive Plan; to promote stable industry; to strengthen the economic base; to protect the character of particular industrial areas and their suitability to particular uses; to preserve the value of land and buildings; and to protect local tax revenues.
E. To encourage the development of industrial parks through the provisions of suitable regulations whereby a number of businesses may locate in a landscaped tract. R.R. at 237a–238a, 1285a–1286a. UDO Section 911.A states that the specific intent of the I–1 Light Industrial District is, *inter alia*, "to allow lot-by-lot industrial development, [and] encourage planned industrial development . . . in which the area and bulk regulations permit increased flexibility in development of industrial tracts, thus assuring increase compatibility between similar uses" and "[t]o ensure location of uses that are free from offensive noise, vibration, smoke, odors, glare,

R.R. at 232a, 1180a. According to the Township's 1997 Comprehensive Plan Update (CPU) (R.R. at 242a–324a), the Land Use Plan Goals and Objectives are: to maintain the Township's primarily rural atmosphere; to preserve and protect its established villages; to protect its existing single family neighborhoods and guide future suburban residential and multi-family development; to promote business growth; and, to protect residential areas from intrusion and negative impacts due to non-residential development. R.R. at 288a–289a. The latter goal is the only one that references the Township's I–1 Light Industrial District, and only in terms of revising the setback and buffer areas to enhance residential protection. R.R. at 289a. Notably, the Township's planning commission concluded in the CPU that "[c]ommercial and industrial development in appropriate locations which do not impact residential neighborhoods is desirable since these developments provide increase[d] revenues without adding children to the schools." R.R. at 287a.

MarkWest personnel testified that in selecting a site for the Proposed Facility in the Township it took into account logistics, engineering and hydraulic issues, proximity to wells and the Houston processing plant, ease of access, size and buffer distances from residents, and other favorable environmental factors, and it plans to install a fence and landscaping as a sound and visual buffer. FOF 54, 64, 80; R.R. at 61a, 83a–84a, 969a–980a. MarkWest produced evidence that the Property afforded the most available remote space in the Township and is located 1,000 feet from any structure in an area anticipated for light industrial use. FOF 9, 65, 66; R.R. at 970a–971a, 979a–980a, 986a.

MarkWest also presented significant testimony relative to the safety features it will employ at the Proposed Facility, including an 8–foot fence with barbed wire, locked gates with emergency shut-down buttons, "fire eyes" that will halt the operation if sparks are detected; interfaces will be established with local fire departments, first responders and PA One Call; and, gas flow and pressure are monitored. FOF 67–68; R.R. at 85a–92a, 121a, 916a. Accordingly, MarkWest demonstrated and the Board's findings are supported by substantial evidence that the Proposed Facility shall comply with the Comprehensive Plan's Land Use Plan Goals and Objectives regarding encouragement of industrial development, promotion of stable industry, appropriateness of location, sufficiency of space, protection of residents, avoidance of industry congestion, strengthening of the economic base and protection of local tax revenues, in accordance with Section 404.B.1.a of the UDO.

Section 404.B.1.b of the UDO provides: "If a commercial, industrial, or special development district, such use shall comply with the performance standards specified in Part 16 of this Chapter [setting forth the Township's environmental performance standards].[23]" R.R. at 232a, 1180a. As stated above in the discussion relative to Board Conclusion 21, MarkWest made an express commitment that it would "absolutely" comply with the UDO Part 16 re-

---

hazards of fire or other objectionable effects...." R.R. at 238a, 1286a.

23. Section 1601 of the UDO provides:
Zoning Ordinances are concerned with the impacts of an individual's property use and seek to ensure that people use their property in a manner that does not unreasonably interfere with other persons' use of their property. The regulations contained in this Part shall be applicable to all land uses established in all zoning districts of the Township. Subjective performance standards shall not apply....
R.R. at 1396a.

quirements. R.R. at 93a–94a. Specifically, noise will not exceed 60dbA (Section 1602) (FOF 14, 77, 78), smoke and particulate emissions that are not burned off or captured will be subject to DEP air permits (Section 1604) (FOF 20–23, 27, 73–74, 76), odors will be captured by VRUs (Section 1605) (FOF 20, 77), and liquid and solid waste disposal requirements will be met with soil and water protection controls and with DEP and EPA monitoring (Section 1608) (R.R. at 82a, 93a–94a, 394a, 455a, 975a–976a). Thus, MarkWest demonstrated and the Board's findings are supported by substantial evidence that the Proposed Facility shall comply with the Township's specified environmental performance standards in accordance with Section 404.B.1.b of the UDO.

Section 404.B.1.c of the UDO requires: "Such use shall have no greater impact on the environment or adjacent properties than those uses permitted by right in the district in which the use is to be located." R.R. at 232a, 1180a. McHale assured the Board that MarkWest will be able to meet this requirement that the Proposed Facility not have a greater impact on the environment or adjacent properties than any use permitted by right, due to its compliance with the UDO's noise, emissions, odor and liquid and solid waste disposal requirements. R.R. at 94a, 96a. Rimkus also testified:

> We could be putting in here pharmaceutical manufacturing, furniture plants, paint plants. I mean, these things would have certainly no different effect than ours. If anything, it would be more dilatory. And I don't get[,] given when so many things were built[,] and given this site has been zoned industrial as long as it has . . . that our facility is going to have any different impact than any of the other facilities that could go in there.

R.R. at 875a. In response to adjacent resident concerns about danger the Proposed Facility could pose, Rimkus said:

> The manufacturing, compounding, assembling treatment of some of these things like leather. I mean, you have VOCs, ammonia, sulfides, particulates, chromium. You're going to potentially have water discharges associated with that. With paint, xylene, toluylene, methyl ethyl ketones, methanol, isopropyl alcohol. My point is I could go one by one through all these, paper, paper board, plastic. The emissions associated with—the potential pollutants associated with these things are a long list, you know. . . . [T]his is an incredibly safe site. . . . It will certainly pose no greater threat to the surrounding community than any of these things that are listed in the I–1 district.

R.R. at 973a–974a. The mandate of this subsection is more specifically laid out in Section 911.D.1 which details the particular elements to be considered. As that analysis applies equally here and requires a more indepth review of the facts, this subsection will be considered in conjunction with Section 911.D.1 later in this opinion.

Finally, Section 404.B.1.d of the UDO states: "Such use shall involve processes and produce equivalent to the processes and products listed in the permitted uses by right for the district in which the use is to be located." R.R. at 233a, 1181a. The Board concluded that "the primary purpose of the Proposed Facility is the collection and transmission of natural gas . . . which would be an essential service as defined by the UDO." Board Op. at 12. An essential service is a permitted use by right. As discussed above, the Board ruled that the Proposed Facility was not an essential service because "the collection and transmission of natural gas [does not

go] directly to the end user." Board Op. at 12. We held that because the UDO contains no requirement that MarkWest's collection and transmission of natural gas reach the end user and the Board has only that authority set forth in the UDO, that part of Conclusion 12 was legal error. *See also supra* Board Conclusion 13 and our discussion regarding it. Thus, the Board's findings are supported by substantial evidence in regard to the Board's legal conclusion that the Proposed Facility shall involve processes and produce equivalent to the processes and products permitted by right in the I–1 Light Industrial District. Thus, Section 404.B.1.d of the UDO is satisfied.

The Board's findings also support that MarkWest produced evidence relative to each item the Board must specifically consider when deciding special exceptions in the Township's I–1 Light Industrial District pursuant to Section 911.D.1 of the UDO.[24] That section begins:

a. Uses **of the same general character as any** use listed as permitted by right or listed as a conditional use in the I–1 district shall be allowed *after* **determination of the [Board] that the impact** of the proposed use on the environment and adjacent properties and streets **is equal to or less than any use specifically listed in the district.** In making such determination, the Board shall consider the following characteristics of the proposed use[.]

R.R. at 239a–240a, 1287a (emphasis added).

The first UDO Section 911.D.1.a characteristic the Board must examine is "[t]he number of employees." Board Conclusion 5; R.R. at 239a, 1287a. It is undisputed that once construction is completed, one MarkWest employee will make rounds at the Proposed Facility at least once during every 12–hour shift and that, occasionally, mechanics will be dispatched to the Property to work on the equipment. FOF 69; R.R. at 81a, 377a, 422a, 460a, 890a. The Board's finding was supported by substantial record evidence regarding the number of MarkWest employees at the Proposed Facility. Logic dictates that one employee and occasional mechanics to work on the equipment is an equal or lesser impact on the environment and adjacent properties than any use permitted by right in the I–1 Light Industrial District. *See supra* note 8 herein.

The next UDO Section 911.D.1.a characteristic the Board must consider is "[t]he floor area of the building or gross area of the lot devoted to the proposed use." Board Conclusion 5; R.R. at 239a, 1287a. The Board made express findings on MarkWest's evidence that the Proposed Facility will consist of the natural gas compressor station, supporting equipment and a driveway providing direct access from Route 980 and, with the exception of the underground gas transmission lines, the compressor station will consist of a 500 feet by 800 feet pad located roughly in a 15–acre center portion of the 71.5–acre Property fully enclosed by a fence with a secure gate. FOF 5, 7, 8, 10, 13, 65; R.R. at 65a, 67a, 69a, 104a–105a, 108a, 144a, 198a, 343a, 372a–374a, 388a, 397a, 943a–944a, 951a. Moreover, the Board does not dispute that the Proposed Facility complies with the UDO's area and bulk regulations (Section 911.E and F; R.R. at 240a–241a, 1288a) relating to lot size, setbacks and building height, and building and impervious surface coverage. *See supra* note 9. In light of these findings which are based on substantial evidence, and the Board's conclusion that the Proposed Facility would be the same as an essential

---

**24.** We will separately address each subsection of Section 911.D.1 of the UDO.

service, it must be concluded that the Proposed Facility has an equal or lesser impact on the environment and adjacent properties than any use permitted by right in the I–1 Light Industrial District.

The next UDO Section 911.D.1.a characteristic the Board must review is "[t]he type of products, materials, equipment and/or processes involved in the proposed use." Board Conclusion 5; R.R. at 239a, 1287a. As we discussed relative to Section 404.B.1.d of the UDO above, the Board concluded that "the primary purpose of the Proposed Facility is the collection and transmission of natural gas. . . ." which would be an essential service as defined by the UDO. Board Op. at 12. Thus, it must be concluded that the Proposed Facility has an equal or lesser impact on the environment and adjacent properties than any use permitted by right in the I–1 Light Industrial District.

The next UDO Section 911.D.1.a characteristic the Board must examine is "[t]he magnitude of walk-in trade." Board Conclusion 5; R.R. at 239a, 1287a. It is undisputed that MarkWest will have no walk-in trade. As the Board found, subcontracted haulers will enter the Property approximately once or twice a week to remove the condensate (i.e., residual waste). FOF 69; R.R. at 394a, 417a, 971a. Because there is no walk-in trade, it must be concluded that the Proposed Facility has an equal or lesser impact on the environment and adjacent properties than any use permitted by right in the I–1 Light Industrial District.

The last UDO Section 911.D.1.a characteristic the Board must look at is "[t]he traffic and environmental impacts and the ability of the proposed use to comply with the Environmental Standards contained in Part 16 of this Chapter." Board Conclusion 5; R.R. at 239a, 1287a. The Board specifically found that MarkWest's primary route of travel to the Proposed Fa-

cility will be through a single-lane tunnel (FOF 51), licensed haulers will remove water/condensate from the Proposed Facility one to two times weekly (FOF 53, 69), daily traffic will consist of an employee in a pick-up truck monitoring the facility (FOF 69), and access to the site will not require using Township roads (FOF 70–71). The Board's findings relied on pertaining to this criteria are supported by substantial evidence which undisputedly reveal that the volume of traffic is nominal at most and insignificant at best. MarkWest's compliance with the UDO's environmental standards was previously discussed. Accordingly, the Proposed Facility has an equal or lesser impact on the environment and adjacent properties than any use permitted by right in the I–1 Light Industrial District.

The Board and Township residents have been on notice for at least 13 years that an essential service and/or the following businesses are permitted by right at the Property: an assembly/packaging/distributions facility; an automotive repair garage; a contractor's yard; a research facility/laboratory; a manufacturer of goods (including furniture, medical equipment, musical instruments, scientific instruments, baked goods/confections, cosmetics, dairy products, drugs, perfumes, pharmaceuticals, toiletries); a manufacturer who process materials (including bone, concrete products, cellophane, canvas, hair, horn, leather, paper and paper board, plastic, precious or semi-precious metals or stones, marble, metals, shell, straw, textiles, wood, yarn, or paint); a printing service; and, a wholesale trade. For the reasons discussed above, it is clear from the Board's findings concerning the UDO Section 911.-D.1.a criteria that the Proposed Facility has an equal or lesser impact on the environment and adjacent properties than

these other uses permitted by right in the I–1 Light Industrial District.

Section 911.D.1.b of the UDO states: "The proposed use shall comply with all applicable area and bulk regulations of the zoning district in which it is located." Board Conclusion; R.R. at 239a, 1287a. Here, McHale testified, and neither the Township nor the Board disputed, that MarkWest meets all applicable area and bulk regulations for an I–1 Light Industrial District. R.R. at 96a.

Section 911.D.1.c of the UDO requires: "The proposed use shall comply with any applicable express standards and criteria specified in this Chapter for the most nearly comparable conditional use or use by special exception specifically listed in the zoning district in which it is proposed." Board Conclusion 5; R.R. at 240a, 1288a. As previously discussed, the Board concluded that the proposed use would be an essential service. The UDO contains no additional express standards or criteria that an essential service must satisfy. Accordingly, this requirement has been met.

Finally, Section 911.D.1.d of the UDO provides: "The proposed use shall be consistent with the Statement of Intent for the zoning district in which it is proposed and shall be consistent with the Land Use Plan Goals and Objectives of the Comprehensive Plan." Board Conclusion 5; R.R. at 240a, 1288a. "Where a particular use is permitted in a zone by special exception, it is presumed ... that such use comports with the intent of the zoning ordinance." *Brickstone*, 789 A.2d at 340. As we have stated, MarkWest demonstrated and the Board's findings are supported by substantial evidence that the Proposed Facility shall comply with the Comprehensive Plan's Land Use Plan Goals and Objectives regarding encouragement of industrial development, promotion of stable industry, appropriateness of location, sufficiency

of space, protection of residents, avoidance of industry congestion, strengthening of the economic base and protection of local tax revenues. Moreover, MarkWest has fulfilled each standard and criteria specified for a special exception and therefore is entitled to the presumption that the use comports with the intent of the zoning ordinance. Therefore, Section 911.D.1.d of the UDO has been satisfied. In light of MarkWest having complied with each criteria of Section 911.D.1, it has also met Section 404.B.1.c.

Section 908(9) of the MPC states, in pertinent part:

The board ... shall render a written decision.... Where the application is ... denied, each decision shall be accompanied by findings of fact and conclusions based thereon together with the reasons therefor. Conclusions based on any provisions of this act or of any ordinance, rule or regulation shall contain a reference to the provision relied on and the reasons why the conclusion is deemed appropriate in the light of the facts found.

53 P.S. § 10908(9). This Court has held that "[a] zoning board's opinion is sufficient if it provides an adequate explanation of its resolution of the factual questions involved, and sets forth its reasoning in such a way as to show its decision was reasoned and not arbitrary." *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 816 (Pa.Cmwlth.2005). Here, the Board's decision consisted of a single sentence denying MarkWest's special exception application.

[D]ecisions have adopted the course of remanding the case to the Board for correction of the error if the Board has not rendered a proper opinion. We hold that [w]hether this sanction is or is not appropriate rests in the discretion of the court, the major considerations being

the extent of the error and the effect on the parties of the delay attendant on a remand. See generally R. Ryan, Pennsylvania Zoning Law and Practice [§§] 9.4.23–24 (1970).

*Lando v. Springettsbury Twp. Zoning Bd. of Adjustment,* 4 Pa.Cmwlth. 312, 286 A.2d 924, 927 (1972) (citations omitted).

In *Hager v. Zoning Hearing Board of Manheim Township,* 23 Pa.Cmwlth. 361, 352 A.2d 248 (1976), this court recognized that, when the record before the reviewing court clearly shows that there was no evidence before the board that would support [its action], a remand to the trial court or board is not necessary. In this case, the landowner's testimony and the proposed plan he submitted support the conclusion that the board and trial court erred in not granting the landowner's request. Hence, a remand is not necessary in this case.

*Ford v. Zoning Hearing Bd. of Caernarvon Twp.,* 151 Pa.Cmwlth. 323, 616 A.2d 1089, 1093 (1992). We similarly hold here that MarkWest's evidence and its proposed plan as well as the Board's findings support a conclusion that the Board and the trial court erred by not granting MarkWest's special exception application and, therefore, remand to the Board to make findings is not necessary.

Based upon the foregoing, MarkWest clearly produced evidence, and the Board's findings and Conclusion 12 support the conclusion that every factor the UDO requires the Board to consider when reviewing special exception applications in the Township's I–1 Light Industrial District has been satisfied. Because the Board determined that MarkWest did not meet its initial burden of proof, the burden never technically shifted to the objectors to show that the proposed use would have a detrimental effect on the public health, safety and welfare. *Greaton Props.*

However, numerous objectors expressed their concerns regarding emissions, noise, odor, light, traffic, property values and safety. Notwithstanding, the law is clear that objectors to a special exception application "cannot meet their burden by merely speculating as to possible harm, but instead must show a **high degree of probability that it will substantially affect** the health and safety of the community." *Rural Area Concerned Citizens, Inc. v. Fayette Cnty. Zoning Hearing Bd.,* 166 Pa.Cmwlth. 520, 646 A.2d 717, 722 (1994) (emphasis added). More specifically, objectors' evidence "must show a high probability that the use will generate adverse impacts **not normally generated by this type of use**...." *Freedom Healthcare Servs., Inc.,* 983 A.2d at 1291 (emphasis added).

The Board did not make any finding or reach a conclusion that the objectors demonstrated to "a high degree of probability that [the Proposed Facility] will substantially affect the health and safety of the community." *Rural Area Concerned Citizens, Inc.,* 646 A.2d at 722. Nor would the record support such a finding or conclusion. Rather, the Board made numerous findings about the steps MarkWest will take to make its potential impact on the community as minor as possible, and specifically acknowledged: "The Proposed Facility will employ a myriad of safety features." FOF 67–68. This Court has similarly held:

While we may have a great deal of sympathy for the residents in the immediate area of this proposed quarry in their opposition to it, we do not believe that the findings of this board based upon the evidence as heard, are sufficient to justify a denial of this special exception. Most of the reasons for the denial, as heretofore indicated, are anticipated conditions that can be controlled

through the use of the zoning ordinance itself by virtue of the conditions set forth for the issuance of special exceptions or by use of the inherent right in the municipality to restrain and eliminate any noxious use of land. The Zoning Board may not arrogate to itself the power of a court of equity or of a public health board. It is the duty of the board to consider applications for special exception and to grant them when the terms and conditions as set forth in the ordinance have been met and when there has been no showing of an adverse public [e]ffect. The board agrees that the terms and conditions of the zoning ordinance have been met. We find, based upon the findings of fact of the Zoning Hearing Board, that the requisite public detriment has not been shown. Accordingly, **this matter must be remanded to the Zoning Hearing Board with the direction that the special exception applied for be granted upon such terms and conditions as the board may deem appropriate subsequent to whatever further proceedings may be necessary.**

*Appeal of Mignatti Constr. Co., Inc.*, 3 Pa.Cmwlth. 242, 281 A.2d 355, 364 (1971) (emphasis added).

Except for the Board's quotation of various UDO provisions, that the UDO governs the requirements to be considered, that the essential service definition is not ambiguous and applies to certain uses, and that the proposed use is an essential service, the Board's Conclusions are contrary to the facts and the law. In reviewing the Board's findings and the record evidence as a whole, and applying the UDO's terms as written and construing them so as to afford MarkWest the broadest possible use and enjoyment of the Property, we hold that MarkWest's special exception application should have been granted. *See Greth*

*Dev. Grp., Inc.; see also Tink–Wig Mountain Lake Forest Prop. Owners Ass'n.*

Accordingly, the trial court's order is reversed, and this matter is remanded to the trial court to immediately remand to the Board with the direction to grant MarkWest's special exception application within 45 days of the Board's receipt of the trial court's remand order. Should the Board determine within this 45–day period and within the confines of the UDO's objective standards and criteria that any terms or conditions are needed to attach to the special exception application in order to ensure compliance with the UDO, it shall specify the applicable UDO provision and explain why the term or condition is necessary.

## 2. *Exclusion*

 MarkWest and Range Resources next contend that the Township's UDO, as interpreted and applied by the Board, is unlawfully exclusionary of natural gas compressor stations since the net effect of the Board's interpretation of the UDO is that the ordinance unlawfully excludes natural gas compressor stations as a use anywhere in the Township.

 "[A] zoning ordinance which totally excludes a particular business from an entire municipality must bear a more substantial relationship to the public health, safety, morals and general welfare than an ordinance which merely confines that business to a certain area in the municipality." *Twp. of Exeter v. Zoning Hearing Bd. of Exeter Twp.*, 599 Pa. 568, 962 A.2d 653, 660 (2009) (*Exeter*) (quoting *Exton Quarries, Inc. v. Zoning Bd. of Adjustment of W. Whiteland Twp.*, 425 Pa. 43, 228 A.2d 169, 179 (1967)).

Zoning ordinances that exclude uses fall into one of two categories—*de jure* or *de facto*. In a *de jure* exclusion case, the challenger alleges that an ordinance on

its face totally excludes a use. In a *de facto* exclusion case, the challenger alleges that an ordinance appears to permit a use, but under such conditions that the use cannot in fact be accomplished. *Exeter*, 962 A.2d at 659 (citations omitted). "Moreover, a municipality may divide the municipal area into districts and prohibit or regulate activities . . . in areas whose character is not consistent with that use." *Id.* at 660.

Natural gas compressor stations are not prohibited everywhere within the Township as conditional uses or uses by right. Section 2 of Township Ordinance 2–2010 expressly authorizes natural gas compressor stations that operate as midstream facilities, as long as they are consistent with the Township's UDO which allows them by special exception.

Section 911.D.1 of the UDO permits the Board to grant a special exception for the Proposed Facility under "Comparable Uses Which Are Not Specifically Listed" in I–1 Light Industrial Districts, if it finds, *inter alia,* that: (1) the Proposed Facility is of the same general character as, and would have an equal or lesser impact than, any of the Township's permitted conditional uses or uses by right; (2) the Proposed Facility meets the Township's area and bulk requirements; (3) the Proposed Facility complies with the express standards and criteria specified for the most nearly comparable I–1 Light Industrial District use; and, (4) the Proposed Facility is consistent with the intent set forth in Section 911.A of the UDO. The Board did not rule that a natural gas compressor station is excluded from the I–1 Light Industrial District. Rather, it concluded, although wrongly, that based upon the evidence presented, MarkWest did not meet these burdens.

In addition, the Board's denial of a particular use in one type of zoning district does not mean that the use is not permitted in any other district. Section 912.A of the UDO sets forth the uses permitted in the Township's I–2 Heavy Industrial District, stating that the intent of that district is "to provide industrial locations for plants which require large operational areas and which are normally undesirable adjacent to residential and commercial uses. Heavy industrial uses may also have extensive open storage and service areas and may generate heavy industrial-type traffic, requiring easy access to major thoroughfares." R.R. at 1289a. Section 912.B and C of the UDO specify the conditional uses and uses by right permitted in the Township's I–2 Heavy Industrial District. R.R. at 1289a–1290a. As Section 911.D.1 of the UDO does for I–1 Light Industrial Districts, Section 912.D.1 of the UDO, sets forth the Township's special exceptions "Comparable Uses Which Are Not Specifically Listed" in I–2 Heavy Industrial District. R.R. at 1290a–1291a. Section 912.D.3 of the UDO makes the Township's intent clear of its desire to protect its residents from storage, treatment and disposal of hazardous waste, which is in addition to state and federal regulatory requirements. R.R. at 1291a. Like the trial court, under the circumstances, we refuse to interpret the Board's decision excluding the Proposed Facility from the I–1 Light Industrial District to mean that the UDO unlawfully excludes natural gas compressor stations as a use anywhere in the Township.

### 3. *Preemption*

Lastly, MarkWest and Range Resources argue that the Board erred or abused its discretion by finding that the Township's UDO is not preempted by state law to the extent it precludes operations ancillary to oil and natural gas well development. According to the trial

court's January 21, 2013 opinion, at the November 13, 2012 status conference,

the parties agreed that the recent enactment of Act 13, which repealed Pennsylvania's Oil and Gas Act [25] and replaced it with a codified statutory framework regulating oil and gas operations in the Commonwealth, would clearly preempt local zoning ordinances, including [the] Township's UDO as applied in this case, but for the Commonwealth Court's ruling on the Act. The Commonwealth Court's decision, *Robinson Township [v. Pennsylvania Public Utility Commission,* 52 A.3d 463 (Pa.Cmwlth.2012) ] is currently awaiting review by the Supreme Court of Pennsylvania. Although the parties agreed that the awaited decision by the Supreme Court could resolve the issues before this Court, the [Board] and the Township advocated a delay in this decision until the Supreme Court has rendered a decision regarding Act 13, while [MarkWest] and [Range Resources] urged the Court to move forward. While this Court would prefer to have the benefit of the wisdom of the Supreme Court to resolve this matter, the uncertainty of the length of the delay makes further delay impractical.

Trial Ct. 1/21/13 Op. at 7–8.

In the trial court's July 31, 2013 Pa. R.A.P. 1925(a) opinion, it expounded that MarkWest's preemption argument is premised upon its position that the UDO completely precludes the Proposed Facility and, since natural gas compressor stations are not excluded in all of the Township's zoning districts and, in fact, they are expressly permitted, MarkWest's preemption argument must fail. Trial Ct. 1925(a) Op. at 11–12. Moreover, on December 19, 2013, the Pennsylvania Supreme Court in *Robinson Township,* *inter alia,* declared

Act 13, Sections 3303 (providing that Act 13 preempts and supersedes local regulation of oil and gas operations regulated by environmental acts) and 3304 (requiring that local ordinances allow for reasonable development of oil and gas operations) unconstitutional. *See Robinson Twp.* *v.* *Pennsylvania Pub. Util. Comm'n,* —— Pa. ——, 83 A.3d 901 (2013). Because the UDO does not exclude natural gas compressor stations, and Act 13's preemption language has been ruled by our Supreme Court to be unconstitutional, we hold that the trial court properly determined that the Board did not err or abuse its discretion by finding that the Township's UDO is not preempted by state law.

For all of the above reasons, the trial court's order is affirmed in part and reversed in part.

### ORDER

AND NOW, this 26th day of September, 2014, the portions of the Washington County Common Pleas Court's (trial court) January 21, 2013 order affirming the Cecil Township Zoning Hearing Board's (Board) conclusions that the Township's Unified Development Ordinance (UDO) does not unlawfully exclude natural gas compressor stations, and that the UDO is not preempted by state law are affirmed.

The portion of the trial court's order upholding the Board's denial of MarkWest Liberty Midstream & Resources, LLC's (MarkWest) special exception application is reversed. This matter is remanded to the trial court to immediately remand to the Board with the direction to grant MarkWest's special exception application within 45 days of the Board's receipt of the trial court's remand order. Should the Board determine within this 45–day period

---

**25.** Act of December 19, 1984, P.L. 1140, *as amended,* 58 P.S. §§ 601.101–601.605; *re-* *pealed and replaced by* 58 Pa.C.S. §§ 2301–3504 (Act 13).

and within the confines of the UDO's objective standards and criteria that any terms or conditions are needed to attach to the special exception application in order to ensure compliance with the UDO, it shall specify the applicable UDO provision and explain why the term or condition is necessary.

If the Board fails to act or acts contrary to this Court's directives, any party may seek enforcement of this Order pursuant to Pa. R.A.P. 2591(b).