# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Zippy's Car Wash      :
(Triple C Development)      :
     :
         v.      :    No. 35 C.D. 2019
     :    Argued: November 14, 2019
Zoning Hearing Board      :
of Township of Ridley      :
and Township of Ridley      :
     :
Appeal of: Township of Ridley      :


**BEFORE:   HONORABLE P. KEVIN BROBSON, Judge**
**HONORABLE ELLEN CEISLER, Judge**
**HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge**


*OPINION NOT REPORTED*


**MEMORANDUM OPINION**
**BY JUDGE BROBSON**            **FILED:  January 6, 2020**


The Township of Ridley (Township) appeals from the order of the Court of Common Pleas of Delaware County (common pleas), dated December 11, 2018. Common pleas reversed the decision of the Zoning Hearing Board of the Township of Ridley (Board), which denied the application of Zippy's Car Wash—Triple C Development (Applicant) for zoning relief to operate a car wash in the Township. We now vacate and remand.

## I. BACKGROUND

On August 9, 2017, Applicant entered into a ground lease with Harper Associates (Owner) for property located within the Township at 201 Kedron Avenue

(the Property). Applicant seeks to construct and operate an automated car wash on the Property, which is adjacent to an existing Wawa gas station and convenience store and half a block from an existing car wash. The Property is split zoned, with approximately 60% of the Property located in the Township's C-2 General Commercial District (C-2 district) and approximately 40% located in the B (Residential) District (residential district).

On September 28, 2017, pursuant to Owner's authorization, Applicant applied to the Board for zoning relief. First, Applicant asked the Board to make a determination that its proposed car wash use is permitted under Section 325-32(G) of the Township of Ridley Zoning Ordinance (Ordinance). Section 325-32 of the Ordinance, which is part of Article VII of the Ordinance governing the C-2 district, provides, in relevant part:

> A structure may be erected or used and a lot may be used or occupied for any of the following uses and no other:
>
> . . . .
>
> G. Uses which, in the opinion of the Zoning Hearing Board, are of the same general character as those listed as permitted uses[1] and which will not be detrimental to the intended purpose of this district.

---

[1] Section 325-32 of the Ordinance expressly permits uses in two ways. First, subsection (A) incorporates by reference "[a]ny principal use permitted in the C-1 Neighborhood Commercial District[]." Such uses incorporated by reference are:

A. Any use permitted in the C Residential Districts, except single- and two-family dwellings, subject to the regulations of the C Residential Districts.

B. Retail sales shall be conducted only in a fully enclosed building. No sales or exposure of goods for sale are permitted outside of the building.

(1) Food market.

(2) Drugstore.

(3) Clothing.

2

(4) Shoe store.

(5) Restaurant, but not to include the "drive-in" type.

(6) Jewelry store.

(7) Gift shop, florist shop.

(8) Book store, stationery shop.

(9) Radio, television and music store.

(10) Variety store.

(11) Dry goods and notions store.

(12) Hardware store, sporting goods.

C. Offices for lawyers, realtors, architects, engineers, tax consultants and similar professional businesses; offices for industrial and trade union; offices for credit union and offices for commercial and civic organizations.

D. Medical clinics and offices of doctors, dentists, osteopaths and similar or allied professions but not including veterinarian establishments.

E. Banks, offices of stock brokers and finance agencies.

F. Offices for nonprofit organizations, social and fraternal associations, political and religious organizations.

G. Business office of a public utility, transportation, advertising, insurance, executive and administrative offices of commercial and industrial establishments.

H. Offices of local, state and federal government agencies.

I. Miscellaneous business services such as consumer credit reporting services, telephone answering services, engineering and art supply dealers.

J. Florist shops, art galleries, specialty shops selling at retail where goods are not created or stored other than for sale.

K. Mortician and funeral establishments.

L. Studios for musicians, artists, photographers and dancing instruction.

M. Educational instruction and commercial schools.

N. Personal service shops which deal directly with consumers, offices and establishments, provided that each such use occupies a total floor area of not more than 4,000 square feet.

(1) Barber and beauty shops.

(2) Dry cleaning and laundry pickup shops.

3

(3)  Tailors and dressmaker shops.

(4)  Self-service laundry.

(5)  Finance and loan agencies.

(6)  Medical and dental offices.

O.  Other uses which are similar to the above and subject to the following regulations:

(1)  All business establishments shall be retail or service establishments dealing directly with consumers.  All goods produced on the premises shall be sold at retail on the premises where produced.

(2)  All uses in this category shall be subject to approval by the Zoning Hearing Board prior to issuance of a zoning permit.

P.  Customary accessory uses and buildings incidental to any of the above permitted uses, including the following:

(1)  Advertising signs customarily incidental to any of the permitted uses pertaining only to the products or services offered for sale on the premises and subject regulation in Article XII of this chapter.

(2)  Fence, subject to regulation in Article XIII of this chapter.

Q.  No permitted use in this district shall include a drive-through or walkup window whereby the consumer transacts for goods or services outside of the building.

Second, Section 325-32(B)-(F) of the Ordinance permits:

B.  Any retail business whose principal activity is the sale of new merchandise in an enclosed building, including, but not limited to the following:

(1) Automobile sales, boat sales, motorcycle sales.

C.  Retail sales in which both a workshop and a retail outlet or showroom are required (such as plumbing, electrician, interior decorating, dressmaking, tailoring, upholstering, photographic reproducing, radio and home appliance and similar establishments), subject to the following provision:  Not more than 25% of the total usable floor area of the establishment shall be used for servicing, repairing, manufacturing or processing activities.

D.  Restaurants, tea rooms, cafes and other establishments serving food and beverages, except those having the character of a "drive-in" type.

E.  Enclosed theaters, assembly halls, concert halls, and similar places of assembly or entertainment.

4

Applicant requested, in the alternative, a use variance permitting the proposed car wash.

The Board held a hearing on November 8, 2017. At the hearing, Applicant's Chief Operating Officer, Austin Evans (Evans), testified that the proposed use consists of an automated car wash enclosed in a 115-foot tunnel. Evans explained that the car wash would operate every day from 8:00 a.m. to 8:00 p.m. and would be attended by approximately four employees during operation. He also described the use of the car wash as follows:

> [Customers] pull up to . . . the pay terminals, which is where they[] . . . select their wash . . . .
>
> Once they pay[,] . . . [they] pull around, where another employee will greet them here at the front side of the tunnel and guide them onto our conveyor track.
>
> As they pull onto the conveyor track, the employees will prep[are] the car inside the building, if applicable, and start the wash.
>
> . . . .
>
> Once [the customers] come to the exit end of the tunnel, . . . they pull around to the vacuum area.
>
> As you can see on the site plan here, we have 18 proposed vacuum spaces in which the customers will be available to have free vacuums . . . .

F. Customary accessory uses and buildings incidental to any of the above permitted uses, including the following:

(1) Advertising signs subject to regulation in Article XII of this chapter; provided, however, that such signs shall not detract from the general intended purpose of this district.

(2) Fence, subject to regulation in Article XIII of this chapter.

5

And then . . . they would pull out here, our exit, in the shared-access driveway between the car wash and the Wawa.

(Reproduced Record (R.R.) at 42-43.)

Applicant also presented the testimony of John Pettit (Pettit), a professional engineer licensed in Pennsylvania. Pettit testified that, in his opinion and experience, the proposed car wash is a commercial use which is of the same general character as other commercial uses permitted in the Township's commercial zoning districts, including the C-2 district. Pettit identified retail sales and automobile sales as two uses expressly permitted under the Ordinance which are, he opined, similar in intensity to the proposed car wash use. He also offered his opinion that the proposed use is consistent with (1) the C-2 district's purpose of encouraging a wide range of commercial functions and (2) the character of the neighborhood and surrounding uses, including the Wawa and a nearby restaurant.

In describing the car wash process, Pettit clarified that the payment terminals and the vacuum areas will be located outside the proposed building: "We will have access off of th[e] driveway into the queue for the pay kiosk. You then go into the building, . . . come out, [and] go to the vacuum spaces." (R.R. at 50-51.) Finally, Pettit testified that all aspects of the proposed use—with the exception of one small part of the exit drive—will be located within the portion of the Property located in the C-2 district.

Several community members spoke at the hearing, either asking questions of Applicant's witnesses or offering their own comments on the application. Sarkis Gharadaghian, owner of the nearby Ridley Car Wash, expressed his opinion that the community cannot support two car washes. Tracey Dilossi, who lives just down the street from the Property, voiced concern about the traffic impacts

6

of the proposed use, but she clarified that she opposed the design of an adjacent major road rather than the proposed use itself. Lois Moore asked how Applicant would process wastewater, and Evans explained that any wastewater would be either transported offsite for treatment or discharged to the sanitary sewer system.

George Buckley (Buckley), another community member, entered an appearance and was made a party to the hearing before the Board. He asked several questions of Evans concerning Applicant's ability to monitor and accommodate especially heavy use of the car wash. Buckley also pointed out that Section 325-32(H) of the Ordinance[2] appears to prohibit transaction for goods or services outside of a building, such as would occur at the outdoor pay terminals that are part of the proposed car wash. The Board acknowledged that the application entails outdoor transactions but responded to Buckley's comment by explaining that, because the car wash is not an expressly permitted use in the C-2 district, the outdoor transaction limitation does not apply.

Following the hearing, the Board issued a decision denying the application and including the following relevant findings of fact and conclusions of law:

Findings of Fact

. . . .

2. The [P]roperty is situated within two zoning districts, . . . 60% . . . of which lies in the [C-2 district] and . . . 40% . . . of which lies within [the residential district].

3. [Applicant] wishes the Board to make a finding that the proposed car wash use is of the same general character as those permitted uses listed at Section 325-32 [of the Ordinance,] or in the alternative, that a use variance be

---

[2] Section 325-32(H) of the Ordinance provides: "No permitted use in [the C-2] district shall include a drive-through or walkup window whereby the consumer transacts for goods or services outside of the building."

granted because the duel [sic] zoning of the [Property] constitutes a unique hardship upon [Applicant].

. . . .

7.    The car wash building would be located entirely within the [C-2 district].

8.    Approximately . . . 40% . . . of the proposed use would be within the [residential district].

Conclusions of Law

1. A car wash use is not of "the same general character" as those permitted uses listed at Section 325-32 of the Ordinance.

2. The fact that the proposed site exists within dual zoning districts is not a unique topographical and physical characteristic peculiar to the [P]roperty to constitute a substantial unnecessary hardship to support the approval of a use variance for a car wash.

(R.R. at 13-14.)  In a memorandum opinion accompanying its decision, the Board explained its first conclusion of law by citing decisions by Pennsylvania courts holding that a car wash use is accessory to and of the same general character as an automotive repair shop, garage, or gasoline service station.  Those uses, the Board observed, are not listed as permitted uses in Section 325-32 of the Ordinance.  Based on their exclusion, the Board concluded that the drafters of the Ordinance similarly intended to exclude car wash uses from the C-2 district.  Regarding its second conclusion, the Board stated that, under Pennsylvania law, split zoning does not constitute an unnecessary hardship and does not, therefore, support the grant of a use variance.

Applicant appealed to common pleas, arguing that the Board erred in concluding that a car wash was not permitted by right in a C-2 district and in denying its alternative request for a variance.  Common pleas reversed the Board's decision

8

and granted all relief necessary for Applicant to pursue the proposed use on the Property.  The Township now appeals to this Court.[3]

## II.  ISSUES

On appeal,[4] the Township argues that the Board correctly concluded that the proposed car wash use is not permitted in the C-2 district under Section 325-32(G) of the Ordinance, and common pleas erred in concluding otherwise.  The Township also argues that the trial court erred to the extent it granted variance relief.

## III.  DISCUSSION

### A.  Section 325-32(G) of the Ordinance

The Township contends that the Board properly concluded that the proposed car wash is not "of the same general character" as the uses permitted in the C-2 district and, therefore, is not permitted in the C-2 district under Section 325-32(G) of the Ordinance.  In support of its argument, the Township emphasizes the similarity of the proposed use to an automotive service station use (which is permitted only by special exception) and the stated purpose of the C-2 district, which is to encourage pedestrian—not automotive—use.  In response, Applicant argues that the Board erred by (1) ignoring unrebutted expert testimony concerning the proposal's consistency with the purpose of the C-2 district, (2) ignoring Pennsylvania law treating a car wash as a generally permitted

---

[3] The Board, though named as an appellee, joins in the Township's brief on appeal.

[4] "Where a trial court takes no additional evidence in an appeal from a decision of [a zoning b]oard, this Court is limited to considering whether the board erred as a matter of law or abused its discretion." *German v. Zoning Bd. of Adjustment*, 41 A.3d 947, 949 n.1 (Pa. Cmwlth. 2012). "A zoning board abuses its discretion if its findings are not supported by substantial evidence." *Arter v. Phila. Zoning Bd. of Adjustment*, 916 A.2d 1222, 1226 n.9 (Pa. Cmwlth.), *appeal denied*, 934 A.2d 75 (Pa. 2007).

commercial use, and (3) applying the Ordinance in a manner that impermissibly excludes car washes from the Township.

At the outset, we note that the parties argue that we should defer to the Board's interpretation of the Ordinance or, alternatively, that we should liberally construe the Ordinance to allow the broadest possible use of the Property. While those interpretive principles are well established in Pennsylvania law when interpreting ambiguous ordinances or statutory provisions, we see no ambiguity in the language of Section 325-32(G) of the Ordinance. The language is not susceptible of two or more reasonable interpretations, nor is it "vague, uncertain, or indefinite." *Kohl v. New Sewickley Twp. Zoning Hearing Bd.*, 108 A.3d 961, 968 (Pa. Cmwlth. 2015). Nor do the parties assert that this language is ambiguous or unclear. Instead, the language of Section 325-32(G) is clear: it requires the Board to determine whether a proposed use is of the same general character as permitted uses and, therefore, is permitted within the C-2 district. Thus, in our estimation, the parties' arguments are not concerned with the *meaning* of the operative language but with whether the Board properly *exercised* its authority under Section 325-32(G) to determine that the car wash use is not "of the same general character" as the permitted uses. Accordingly, we will not apply the interpretive presumptions that the parties propose.

In reviewing this very Ordinance, we have held that whether a use is "of the same general character" as permitted uses presents a question of law. *See Cook v. Zoning Hearing Bd. of Twp. of Ridley*, 408 A.2d 1157, 1158-59 (Pa. Cmwlth. 1979). In *Cook*, the Board denied an application for an outdoor used car sales lot within the C-2 district on the ground that it was not "of the same general character" as the uses listed as permitted within the district, such as the retail sale of

new merchandise within an enclosed building. There, as here, common pleas reversed the Board's denial, and the Township appealed to this Court. Although the provisions of the Ordinance appear to have been renumbered since *Cook*, the language at issue is identical to the operative language here. Examining what would later become Section 325-32(G) of the Ordinance, we wrote:

> Whether or not the "same general character" uses allowed by Section [325-32(G)] are merely permitted uses or uses allowed by special exception, the question of whether an open air used car lot is a use of the same general character as a retail business whose principal activity is the sale of new merchandise in an enclosed building . . . persists. *The question is one of law.* We hold that an open air used car lot is not of the same general character as a retail business conducted in an enclosed building. The used car lot was not, therefore, either a permitted use or a use permitted by special exception.

*Id*. (emphasis added) (footnote omitted). We also have held that, where an ordinance requires that a proposed use be of the "same general character" as other permitted uses, the ordinance "does not require the [p]roposed [use] to have the '*same* character,' but rather a *similarity to other uses permitted by right* in the [zoning district]." *MarkWest Liberty Midstream & Res., LLC v. Cecil Twp. Zoning Hearing Bd.*, 102 A.3d 549, 558 (Pa. Cmwlth. 2014) (emphasis added) (discussing ordinance allowing uses "of the same general character"), *appeal denied*, 113 A.3d 281 (Pa. 2015).

Turning to the instant case, it appears that the Board's decision is inadequate in at least two respects. First, although the Board found that the car wash building would be entirely located within the C-2 district, it also found that "[a]pproximately . . . 40% . . . of the proposed use would be within the [residential district]." (R.R. at 14.) This latter finding is plainly inconsistent with testimony and

11

documentary evidence, showing that the residential portion of the Property will be virtually vacant, with only a small portion of the exit drive being located in the residential district. (R.R. at 52; Original Record (O.R.), Application, Ex. 8.)

Second, and most importantly, the Board did not engage in adequate legal analysis of whether the proposed car wash is of the same general character as the permitted uses. Sections 325-25 and 325-32 of the Ordinance list dozens of uses permitted by right in the C-2 district, including retail sales establishments (markets, stores, shops, new vehicle sales), personal service establishments (restaurants, offices, clinics, banks, laundries), and social and cultural venues (schools, studios, galleries, theaters). Rather than analyzing the similarities between these uses and the proposed car wash, the Board focused narrowly on Pennsylvania case law describing car washes as accessory uses to automobile repair shops and gas stations. Based on that narrow inquiry, the Board determined that, because repair shops and gas stations are not permitted as of right in the C-2 district, car washes must be similarly excluded because "what is not given is the same as what is denied." (R.R. at 16.) That reasoning might be a relevant *part* of the inquiry into whether the proposed use is of the same general character as permitted uses, but it certainly is not sufficient on its own to answer that question.

In other words, Section 325-32(G) of the Ordinance requires the Board to determine the similarity of the proposed use to the *permitted* uses, not only its similarity to uses which are *not permitted*, which was the Board's sole focus here. Although the Board gave a brief summary of the listed permitted uses in Section 325-32(G), it failed to recite any of the uses listed under Section 325-25 (which are incorporated by reference in Section 325-32(A)), and it failed to engage in any discussion whatsoever of how the car wash use, as proposed, is similar to or

12

different from the listed permitted uses. Moreover, the Board's decision addressed car wash use in general without discussing the features of the proposed use in particular, including the fact that much of the use will occur within the enclosed car wash building. It is not clear how the Board could have made the determination required by Section 325-32(G) without (1) a comprehensive, exhaustive review of all the listed permitted uses, including those incorporated by reference, and (2) a fact-intensive analysis of how the proposed use is similar to, or different from, the permitted uses. The Ordinance authorizes the Board—rather than common pleas or this Court—to make that determination in the first instance, including by making findings of fact with respect to the specific proposed use as it compares with the listed permitted uses. Accordingly, remand is appropriate to allow the Board to make such findings and perform a sufficiently thorough analysis.[5]

## B. Variance Relief

Given that the Board must remake its determination under Section 325-32(G) of the Ordinance, we need not review its determination regarding variance relief at this time. We note, however, that the Board mischaracterized the relevant variance issue in this matter. In its decision, the Board described Applicant's request for variance relief as a request "that a use variance be granted because *the duel [sic] zoning of the [Property]* constitutes a unique hardship upon

---

[5] Applicant, though not now asserting a claim of exclusionary zoning, argues that Section 325-32(G) of the Ordinance permits the proposed car wash because to apply that section otherwise would render the Ordinance *de facto* exclusionary and, therefore, invalid. We are not persuaded by Applicant's argument. First, the issue of whether the Ordinance is exclusionary is not before the Court at this time. Second, Applicant has presented no evidence of such a complete exclusion, apart from counsel's statement at the hearing that "no zoning district in the Township . . . expressly permits a car wash use," and Pettit's testimony that, to his knowledge, the Ordinance does not expressly permit a car wash in any zoning district. (*See* R.R. at 48, 71.) That is not to say that Applicant, through another action, cannot establish that the Ordinance is exclusionary. Furthermore, nothing in our opinion should be interpreted as addressing that issue.

13

[Applicant]." (R.R. at 14 (emphasis added).) The Board focused its analysis solely on the split-zoned nature of the Property without discussing whether Applicant had identified other sources of hardship. On appeal, the Township also focuses on the split zoning issue, arguing that Applicant should have sought a use variance in order to use the residential portion of the Property *even if* Section 325-32(G) permits the use. In contrast, the record establishes that Applicant sought, *as an alternative* to approval under Section 325-32(G), "a variance *from* Section 325-32 to permit a car wash in the [C-2 district]," without regard to the split-zoned nature of the Property. (R.R. at 25 (emphasis added).) Thus, Applicant requests a use variance allowing the proposed use on the Property *only* in the event that Section 325-32(G) does not permit the car wash use as of right.

If, on remand, the Board concludes that Section 325-32(G) of the Ordinance does not permit the proposed car wash use, the Board must then consider Applicant's alternative request for a use variance. That analysis should not focus narrowly on split zoning, but should assess all of the requirements for use variances set forth in Section 910.2 of the Municipalities Planning Code,[6] including demonstration of an unnecessary hardship due to the physical conditions or circumstances of the Property. *See generally Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 812 (Pa. Cmwlth.), *appeal denied*, 887 A.2d 1243 (Pa. 2005) (discussing standard for demonstrating entitlement to variance relief). On the other hand, if the Board concludes that Section 325-32(G) of the Ordinance permits the proposed use, then the Board need not consider variance relief, as Applicant sought that relief only as an alternative to approval under Section 325-32(G).

---

[6] Act of July 31, 1968, P.L. 805, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2.

14

## IV.  CONCLUSION

For the foregoing reasons, we vacate common pleas' order and remand this matter to common pleas with direction to remand to the Board for proceedings consistent with this opinion.

_____
P. KEVIN BROBSON, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Zippy's Car Wash :
(Triple C Development) :
                         :
                v. :    No. 35 C.D. 2019
                         :
Zoning Hearing Board :
of Township of Ridley :
and Township of Ridley :
                         :
Appeal of: Township of Ridley :

## O R D E R

AND NOW, this 6th day of January, 2020, the order of the Court of Common Pleas of Delaware County (common pleas), dated December 11, 2018, is VACATED, and this matter is REMANDED to common pleas for proceedings consistent with the attached opinion.

      Jurisdiction relinquished.

                                     _____
                                       P. KEVIN BROBSON, Judge