IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Angels Light Halfway House      :
Derry, LLC                        :
                                   :
            v.               :    No. 1086 C.D. 2024
                                 :    Submitted: May 6, 2025
Union Township,           :
               Appellant   :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge[1]
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER       FILED: September 16, 2025

      Union Township (Township) appeals from the July 19, 2024 Order of the Court of Common Pleas of Lawrence County (common pleas) that reversed the Township's Board of Supervisor's (Board) decision denying Angels Light Halfway House Derry, LLC's (Angels Light) application (Application) to operate a residential drug and alcohol treatment facility, exclusively for women, pregnant women, and mothers with young children (Facility), as a conditional use. Common pleas concluded that Angels Light met its initial burden of proof on the Application and no rebuttal evidence was presented, and, therefore, the Board abused its discretion in denying Angels Light's conditional use request. The Township argues common pleas erred in finding that Angels Light met its initial burden of proof and, therefore, its Order should be reversed. After thorough review, we affirm common pleas' Order.

---

[1] This matter was reassigned to the author on June 25, 2025.

## I. BACKGROUND

### A. The Property and the Proposed Use

EE Investments, LLC (EE Investments) owns 2202 West State Street, an approximately two-acre lot with an existing structure, operated as the Bridges Extended Stay Hotel (Property), located in the Township's Central Commercial Zoning District (CC District). On or about June 30, 2023, Angels Light filed the Application seeking approval to use, with a few internal alterations, the Property as a "[r]esidential drug rehabilitation facility" as a conditional use. Angels Light sought relief pursuant to Section 308.50 of the UNION TOWNSHIP ZONING ORDINANCE (2009) (Ordinance) because the Ordinance contains no definition of that use. Relevantly, Section 308.50(a) provides that a use that is not specifically listed in the Ordinance is considered a conditional use so long as certain requirements are met. One such requirement is that the use be "of the same **general** character as **any** of the uses authorized" in the zoning district. ORDINANCE § 308.50(a) (emphasis added).

The Township Planning Commission reviewed the Application and recommended approval. On October 3, 2023, the Board held a hearing on the Application, at which Angels Light offered testimony and evidence about the Property's current use, the proposed use, and the Facility's effect on the Property's surroundings. Michael Mansour, EE Investments' sole member, and Jason Hoover, Angels Light's CEO, testified on Angels Light's behalf. The only member of the public to comment at the hearing did so in support of granting the Application.

Mr. Mansour testified that the Property's current use is as the Bridges Extended Stay Hotel, which he described as "an extended-stay suite hotel [] rent[ed] by the week, by the month . . . usually [by] traveling workers and anybody that would

2

require a stay" like "people that may be going through domestic problems" and "need a place to stay for a short period of time." (Reproduced Record (R.R.) at 27a.) The rooms have "full kitchens, separate bedrooms, separate bathrooms, kind of like an efficiency apartment." (*Id.* at 29a.) He explained that he had problems with the clientele of the Property, including issues with narcotics, but called the police department whenever he recognized the problems. (*Id.* at 34a.) Mr. Mansour also discussed the other uses found in the CC District including: LIFE of Lawrence County, "an inclusive program of medical and support services to help people to maintain independence within the community"; New Castle Comprehensive Treatment Center, which "provides opioid addiction treatment [and] medication assisted treatment" as a methadone clinic; People in Need, which "provide[s] mental health and other counseling services"; numerous retail establishments; and a Holiday Inn Express that provides accommodations "for a short-term-duration stay." (*Id.* at 30a-33a.)

Per Mr. Hoover, the Facility would be operated exclusively for women, pregnant women, and women with children who are not of school age, as there is a great need for such facilities, which is recognized by the state. (*Id.* at 47a-48a, 79a-81a, 86a, 91a.) The Facility would be a voluntary halfway house for residents who have recently been successfully discharged from inpatient treatment. Although this type of drug and alcohol treatment facility shares the same name as a criminal halfway house, which is a step-down from incarceration, due to state regulations, the Facility differs in that it is completely voluntary and subject to different rules and regulations. (*Id.* at 53a, 55a.) Moreover, the Facility would not accept those who committed violent crimes or sexual offenses. (*Id.* at 61a.) On average, residents would stay between three and nine months, during which they would attend

3

counseling sessions and life skills and management courses. The Facility would not provide a doctor or nurse or medical services, including mental health services, to the residents. (*Id.* at 62a, 73a-74a.) Residents are permitted to work up to 20 hours per week in the final stage of their program but are not permitted vehicles. Nor are they permitted visitors or to independently leave the Facility for the day. Residents can voluntarily remove themselves from the program, and, if they do, the Facility, by law, has to return them to their last known address. The Property's interior would not be changed and would consist of 24 rooms split between 2 floors, and security cameras inside (but not in the residential rooms) and outside the Facility would be added. Angels Light could house up to 30 residents, along with up to 2 non-school-aged children per resident.

In its closing statements, Angels Light explained that the CC District contained businesses or entities that did "pretty much [] everything that [the Facility] will do, but they do it on an outpatient basis," as well as hotels, including the current use of the Property, in which persons stay either in the long- or short-term. (R.R. at 112a.) It maintained that because the proposed uses were already allowed in the CC District and Angels Light was just going to put it under one roof, the Application should be granted.

### B. The Board's Decision

The Board issued a decision acknowledging that the Ordinance did not define residential drug rehabilitation facilities and, therefore, the proposed Facility would be allowed if, among other things, it is "of the same general character as any of the uses authorized as Permitted Uses, Special Exceptions, or Conditional Uses in the" CC District, and if its "impact . . . on the environment and adjacent streets and properties is equal to or less than any use specifically listed in this [] Ordinance."

4

(Board Decision, Conclusion of Law (COL) ¶ 7a.) The Board characterized Angels Light's position as being that its proposed use was the same general character as a medical or professional office, which are permitted uses in the CC District. (*Id.* ¶ 11.) The Board rejected this argument, finding that those permitted uses and the proposed use were not similar because the former were for outpatient services, with no overnight or residential treatment permitted. (*Id.* ¶ 12.)

Instead, the Board found the proposed use was most similar to the Ordinance's definition of Halfway House,[2] which is a facility "for inmates on release from more restrictive custodial confinement or initially place[d] in lieu of such more restrictive custodial confinement," and is not permitted in the CC District. (*Id.* ¶ 13 (citation omitted).) The only difference between the two uses, the Board reasoned, was the voluntariness of the Facility's residents. (*Id.*) Alternatively, "using the broadest possible consideration for [the] Applica[tion]," the Board found the Facility was similar to Life Care Complexes and Senior Assisted Living Residences, which are conditional uses in the CC District, due to their shared elements of residency and resident care. (*Id.* ¶ 14.) However, the Facility could not satisfy, among others, the lot area and width, and minimum square footage requirements of those uses. (*Id.* ¶¶ 14-19.) The Board also concluded that

> the current usage of the [] Property [as Motel/Hotel] is not a similar[,] as Motel/Hotel is defined in the . . . Ordinance as[] "a building or group of buildings containing individual rooms or apartment accommodations primarily for transient, each of which is provided with a parking space,

---

[2] Specifically, Halfway House is defined as "a licensed home for inmates on release from more restrictive custodial confinement or initially place[d] in lieu of such more restrictive custodial confinement, wherein supervision, rehabilitation, and counseling are provided to mainstream residents back into society, enabling them to live independently." (COL ¶ 13.) Halfway Houses are permitted as conditional uses only in the M-2 Adult Entertainment Zoning District, along with, among other uses, Public and Private Prisons and Adult Entertainment Establishments. Section 306.10 of the Ordinance, ORDINANCE § 306.10.

5

and offered principally for rental and use by motor vehicle travelers[,]" [which] [] is inherently different from the use proposed by [Angels Light].

(*Id.* ¶ 14.)

For these reasons, the Board held that Angels Light had not met its burden of proving

> that its proposed use is a type permitted by conditional use and the proposed use complies with Township zoning requirements. The use does not comply with all applicable area and bulk regulations and standards for comparable uses specifically listed in th[e] . . . Ordinance, the use does not comply with the Performance Standards of this Ordinance, and the use is not consistent with the purpose statement for the [CC] District and the statement of Community Development Objectives of this Ordinance.

(*Id.* ¶ 20.) Accordingly, the Board denied the Application.

### C. Common Pleas' Opinion

Angels Light appealed to common pleas, which heard oral arguments but did not take additional evidence. Based on common pleas' review, it concluded the Board erred in characterizing the Facility as a Halfway House or as a Life Care Facility or Senior Assisted Living Residence under the Ordinance because the Facility was distinguishable from those uses. (Common pleas' opinion (Op.) at 7-8.) And, as the Facility was distinguishable from the latter two uses, it was not required to meet the dimensional standards for those uses, as the Board found. (*Id.* at 8.) Common pleas held the same general character "does not require the same character but 'rather a similarity to other uses permitted by right in the district.'" (*Id.* at 9 (quoting *MarkWest Liberty Midstream & Res., LLC v. Cecil Twp. Zoning Hearing Bd.*, 102 A.3d 549, 558 (Pa. Cmwlth. 2014)).) After examining the existing

6

uses, including the medical offices, drug addiction treatment facilities, and existing hotels and the extended stay hotel on the Property, to determine their characteristics, common pleas concluded the Facility "is of the same general character as several other uses permitted in the [CC] District," and that Angels Light met its initial burden of proof under the Ordinance. (*Id.* at 9-10.) As no evidence was presented to show that the Facility would have a detrimental impact, common pleas concluded that no rebuttal evidence was offered to Angels Light's evidence. (*Id* at 10.) Therefore, common pleas held that the Board abused its discretion in denying the Application, it granted Angels Light's appeal, and it reversed the Board's Decision.

The Township now appeals.[3]

## II. DISCUSSION

On appeal,[4] the Township argues common pleas erred in reversing because Angels Light failed to meet the Ordinance's conditional use requirements for the reasons set forth in the Board's Decision. Angels Light responds the Board denied

___

[3] The Township filed, at common pleas' direction, a Concise Statement of Issues Complained of on Appeal pursuant to Pa.R.A.P. 1925(b) (1925(b) Statement). Common pleas issued an opinion in accordance with Pa.R.A.P. 1925(a), which indicated its reasoning in its prior opinion addressed the issues raised by the Township's 1925(b) Statement.

[4] We have held that

[i]n a land use appeal, where, as here, the trial court does not take additional evidence, this Court's scope of review is limited to determining whether the local governing body committed an error of law or an abuse of discretion. An abuse of discretion will only be found in circumstances where the findings of the governing body are not supported by substantial evidence. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Ass*[*'n*] *v. Zoning B*[*d.*] *of Adjustment*, . . . 462 A.2d 637, 640 ([Pa.] 1983).

*Marshall v. Charlestown Twp. Bd. of Supervisors*, 169 A.3d 162, 167-68 (Pa. Cmwlth. 2017) (citations omitted).

the Application in error because the Facility is of the same general character as existing uses in the CC District and is more similar to the Property's current use than any of the uses found to be comparable by the Board. Angels Light further asserts the Board's finding that the Facility was akin to the Ordinance's Halfway House use reflected the intent to restrict the proposed use to the Adult Entertainment District.

The law on conditional uses is well established:

A conditional use is a special exception which falls within the jurisdiction of the municipal legislative body rather than the zoning hearing board. Section 603(c) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10603(c). The municipal legislative body may grant a conditional use pursuant to the express standards and criteria set forth in the zoning ordinances enacted pursuant to the police powers to regulate land use. The fact that a use is permitted as a conditional use, rather than prohibited, reflects a legislative decision that the use is not *per se* adverse to the public interest.

In order to demonstrate that the applicant is entitled to the conditional use, the applicant initially bears the burden of establishing that the application complies with the objective standards and criteria of the particular ordinance. Satisfaction of the applicant's burden establishes a legislative presumption that the use is consistent with the health, safety, and welfare of the community. Once the applicant has satisfied this initial burden, the burden shifts to the objectors to rebut this presumption by establishing that the use will have a detrimental impact on the surrounding community.

*Appeal of Richboro CD Partners, L.P.*, 89 A.3d 742, 745 (Pa. Cmwlth. 2014) (citations omitted).

Section 306 of the Ordinance provides:

Conditional Uses . . . for each district are shown in . . . Section 306.10[] [of the Ordinance, ORDINANCE § 306.10,] and are considered principal uses unless clearly noted. Conditional [u]ses may be granted or denied by the Board . . . in accordance with the express standards and criteria of th[e] Ordinance and after the review and recommendations of the []

8

Township Planning Commission. In granting a Conditional Use, the Board . . . may attach such reasonable conditions and safeguards as it may deem necessary to implement the purposes of th[e] Ordinance and the [] [MPC]. . . .

ORDINANCE § 306.

There is no dispute that the Ordinance does not define the term "residential drug rehabilitation facility" or include it as a use in any district. (R.R. at 2a); ORDINANCE § 202. Under Section 308.50 of the Ordinance, uses that are not specifically listed

> may be permitted under the following conditions:
>
> a) Uses of the **same general character as any** of the uses authorized as **Permitted Uses**, **Special Exceptions**, **or Conditional Uses** in the Zoning District **shall be allowed** if it is determined that the impact of the use on the environment and adjacent streets and properties is equal to or less than any use specifically listed in this . . . Ordinance.
>
> b) The use shall comply with all applicable area and bulk regulations and standards and criteria for comparable uses specifically listed in this Zoning Ordinance.
>
> c) The use shall comply with the Performance Standards of this Ordinance.
>
> d) The use shall be consistent with the purpose statement for the Zoning District and the statement of Community Development Objectives of this Ordinance.

ORDINANCE § 308.50 (emphasis added). Uses not specifically listed in the Ordinance subject to Section 308.50 are permitted as conditional uses in the CC District, along with Senior Assisted Living Residences and Life Care Complexes. Section 306.10 of the Ordinance, ORDINANCE § 306.10.

9

The question of whether a use is of the same general character as another use is one of law. *Cook v. Zoning Hearing Bd. of the Twp. of Ridley*, 408 A.2d 1157, 1158-59 (Pa. Cmwlth. 1979). This Court has explained that the phrase "the same **general** character" does **not require** the proposed use "to have the '**same character**, but rather **a similarity to other uses permitted** . . . in the [zoning district]." *MarkWest Liberty*, 102 A.3d at 558 (emphasis added). We must also be mindful that it is well settled that "[w]here a term in a zoning ordinance is ambiguous or **undefined**, we must construe the term **broadly** to allow the landowner the **least restrictive use** of his property." *City of Clairton v. Zoning Hearing Bd. of City of Clairton*, 246 A.3d 890, 903 (Pa. Cmwlth. 2021) (citation omitted) (emphasis added).

Uses permitted by right in the CC District include Motels/Hotels, Medical Offices, and Professional Offices, ORDINANCE § 306.10, which, here, include the existing extended stay hotel, a business that provides medical and support services to clients, a business that provides methadone to treat those addicted to opioids, and a business that provides mental health and counseling services. The Board discounted any use that provided medical treatment or professional counseling services because such treatment and services had to be performed on an outpatient basis. (COL ¶ 12.) It also discounted the Motels/Hotels use, including the current extended stay hotel on the Property, reasoning that the proposed use was "inherently different" from the definition of that use: "a building . . . containing individual rooms or apartment accommodations primarily for transient, each of which is provided with a parking space, and offered principally for rental and use by motor vehicle travelers." (*Id.* ¶ 14.) In rejecting these uses, however, the Board

10

disregarded the Facility's similarity to the existing use of the Property and the other authorized uses providing drug treatment and counseling in the CC District.

The Board's conclusion that the Facility is not the same general character of medical or professional offices was because those permitted uses do not have a residential component. (COL ¶ 12.) However, as this Court held in *MarkWest Liberty*, the proposed use does not have to be the **same** as the authorized uses, just **similar** to those uses. The Board's conclusion requires a level of sameness between the Facility and the comparable authorized uses not required by law.

As to the current use of the Property, the Board seemingly focused on the Ordinance's use of the word "transient" in defining Motel/Hotel and that such rooms are, by that definition, rented "principally" to "motor vehicle travelers." ORDINANCE § 202. However, transient is defined as "not lasting, enduring, or permanent; transitory," "lasting only a short time," "temporary," and "staying only a short time." "Transient," https://www.dictionary.com/browse/transient (last visited August 11, 2025). The evidence shows that neither the existing use nor the Facility are intended to be used for "lasting" or "enduring" stays, and the stays at the Facility are "temporary" and for "a short time." *Id.* Additionally, the word "transient" in the definition of the Motel/Hotel is modified by the word "**primarily**," ORDINANCE § 202 (emphasis added), not with the word "exclusively," meaning this requirement is **not absolute**. Any reliance on the language that the rooms are rented to motor travelers is similarly unconvincing because the Ordinance again uses a modifying word, "**principally**," *id.* (emphasis added), reflecting that this is not an absolute requirement.

Ultimately, in construing an ordinance's provisions, effect must be given to all of the language therein, *Quaker Valley School District v. Leet Township Zoning*

11

*Hearing Board*, 309 A.3d 279, 286 (Pa. Cmwlth. 2024), and the terms must be broadly read to allow for the least restrictive use of the land, *City of Clairton*, 246 A.3d at 903. The Board's analysis in rejecting the similarity between the Facility and the above-discussed authorized uses is inconsistent with both of these principles.

Under the Ordinance, the undefined use can be of the same general character as **any** authorized use in the CC District, and we agree with common pleas that the Facility is of the same general character as several of the actual, authorized uses in the District. These uses include the current use on the Property as an extended stay hotel, another hotel that provides shorter duration stays, and businesses or medical offices that provide medical and support services, mental health and counseling services, and methadone to treat those addicted to opioids. (Common pleas' Op. at 2.) The Facility bears "a **similarity** to [these] permitted uses," *MarkWest Liberty*, 102 A.3d at 558 (emphasis added), in that it will provide housing for its clients for a temporary, not permanent, period of time in order to provide drug and alcohol addiction treatment via counseling (common pleas op. at 9-10).

The Board's conclusion that the Facility is the most similar to the Halfway House use defined by the Ordinance is also inconsistent with the above well-settled principles. This use is permitted by conditional use only in the M-2 Adult Entertainment Zoning District, ORDINANCE § 306.10. (COL ¶ 14.) However, in reaching this conclusion, the Board disregarded the significance of the differences between the Facility, which serves those who are voluntarily participating to better themselves, and a Halfway House, which accepts only inmates who have been released from prison or those who have been court-ordered there in lieu of more restrictive confinement. ORDINANCE § 202. As common pleas correctly noted, Angels Light does not accept any applicants who have been convicted of violent

12

crimes or sexual offenses, which cannot be said about Halfway Houses. (Common pleas' Op. at 7; R.R. at 61a.) In addition, the two uses are subject to completely different rules and regulations. (R.R. at 53a, 55a.) The two uses are, thus, not similar and are not of the same general character, particularly where accepting that position means that the Facility, which serves women, pregnant women, and women with children under school age, could be located **only** in the same zoning district as prisons and adult entertainment establishments, ORDINANCE § 306.10. This would be an absurd reading of the Ordinance, which is a result that is to be avoided when construing the language of an ordinance. *Geerling Florist, Inc. v. Bd. of Supervisors of Warrington Twp.*, 226 A.3d 670, 676 (Pa. Cmwlth. 2020) (citation omitted).

Moreover, even if the Facility was of the same general character as a Halfway House, or another use found in the Ordinance, that does not change the fact that the Facility is **also** of the same general character as the uses **authorized** in the CC District discussed above. The Ordinance does not say an undefined use can be of the same general character as only one authorized use. Rather, the Ordinance provides that an undefined use is authorized if it is of the same general character as **any** of the authorized uses, reflecting that an undefined use can be comparable to **multiple** authorized uses.

Finally, the Board's alternative conclusion that the Facility is closest in character to Life Care Facilities for Senior Residents and Senior Assisted Living Residences is not supported by the definition of these uses or the record. The Ordinance defines "Senior Assisted Living Residence" as "a facility that provides, on a **regular basis, personal care,** including **dressing and eating and health related care and services**, to individuals **who require such assistance** but who do not require the degree of care and treatment that a hospital or skilled nursing facility

13

provides[,]" and "Life Care Facilities for Senior Residents" as "a **long[-]term** facility or a distinct **part of a** facility licensed or approved as a **nursing home, infirmary unit of a home for the aged, or a governmental medical institution**." ORDINANCE § 202 (emphasis added).

We agree with common pleas that Angels Light distinguished the Facility from the conditional uses the Board cited in the alternative. (Common pleas' Op. at 7.) Beyond the uses sharing a residential component, these uses are not similar. The Facility's clients require **no** personal or health-related care and services or assistance with that care or those services. Nor is the Facility related to, or part of, a medical facility, like a nursing home, infirmary unit, or government-run medical institution. Nor is the Facility for "long[-]term" stays but only short-term, temporary stays. ORDINANCE § 202. Thus, these uses are not apt comparisons for the Facility.

This is important because the Board's other bases for denying Angels Light's requested relief were predicated on the Facility not meeting the applicable bulk and area regulations and other criteria and standards for these uses as required by Section 308.50(b)-(c). (COL ¶¶ 14-19.) There is no other indication that the Facility, which will use the Property as it has been used with only internal alterations, fails to meet the criteria that applies to the comparable permitted uses of Motel/Hotel, Medical Office, or Professional Office. Accordingly, the fact that the Facility may not meet the specific bulk and area regulations and other criteria for Life Care Facilities for Senior Residents and Senior Assisted Living Residences was not a proper basis for denying Angels Light its requested relief.

For these reasons, we agree with common pleas that Angels Light met its burden to establish the proposed use is permitted under Section 308.50 of the Ordinance because it is of the same general character as **any** authorized use in the

14

CC District, and that the Board erred in concluding otherwise. Because Angels Light met its burden of proof, it "establishe[d the] legislative presumption that the use is consistent with the health, safety, and welfare of the community." *Appeal of Richboro CD Partners, L.P.*, 89 A.3d at 745. The burden then "shifted to the objectors," of which there were none here, "to rebut this presumption by establishing that the use will have a detrimental impact on the surrounding community." *Id.* No such evidence, not even mere conjecture or arguments against the proposed use, was presented at the Board's hearing by either an objector or the Township. Therefore, there was nothing in the record to rebut Angels Light's evidence. Accordingly, we agree with common pleas that the "Board . . . abused its discretion in denying [Angels Light's A]pplication . . . ." (Common pleas' Op. at 12.)

## III.  CONCLUSION

Here, common pleas applied well-settled principles of zoning law in reversing the Board's Decision because, broadly construing undefined terms to allow for the least restrictive use of property, Angels Light met its initial burden of proof, the burden shifted, and, as no objector appeared at the hearing and Township did not proffer any evidence, there was nothing to rebut Angels Light's evidence. Because the Board's analysis is inconsistent with settled law relating to undefined uses, the Ordinance's language, and the record, we affirm common pleas' Order reversing the Board's Decision.

_____
RENÉE COHN JUBELIRER, President Judge

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Angels Light Halfway House      :
Derry, LLC                  :
                              :
              v.            :    No. 1086 C.D. 2024
                              :
Union Township,          :
              Appellant   :

## **O R D E R**

**NOW**, September 16, 2025, the Order of the Court of Common Pleas of Lawrence County, entered in the above-captioned matter, is hereby **AFFIRMED**.

_____
RENÉE COHN JUBELIRER, President Judge

Angels Light Halfway    :
House Derry, LLC     :
           :
   v.       :
           :
Union Township,     :  No. 1086 C.D. 2024
     Appellant  :  Submitted: May 6, 2025

BEFORE: HONORABLE RENÉE COHN JUBELIRER, President Judge
     HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE COVEY        FILED: September 16, 2025

    Respectfully, I disagree with the Majority's parceling of characteristics of other permitted uses in Union Township's (Township) Central Commercial Zoning District (CC District) to conclude that the proposed residential drug and alcohol treatment facility's (Facility) use is of the same general character as a permitted use. I agree with the Township Board of Supervisors (Board) that using the broadest possible consideration for Angels Light Halfway House Derry, LLC's (Applicant) use request, other uses listed in the CC District that contain an element of residency and resident care are life care complexes and senior assisted living residences. Because I believe that Applicant did not meet its burden of demonstrating that the proposed use is similar to another use permitted in the CC District, or that it complied with the specific area and bulk regulations and other criteria and standards applicable to life care complexes for senior residents and senior assisted living residences, I would reverse the Lawrence County Common Pleas Court's (trial court) July 19, 2024 decision.

Applicant filed an application for a conditional use for the Facility to be located in the CC District (Application). The undisputed evidence before the Board established the following. The subject property, located at 2202 West State Street, is a two-acre lot with an existing structure located in the CC District (Property) operated as a Bridges Extended Stay Hotel. Applicant proposed that the Facility would operate as a voluntary halfway house, housing residents recently successfully discharged from inpatient drug and alcohol treatment facilities. The Facility would be exclusively for women and mothers with children under school age. Applicant does not intend to change the Property's interior. Thus, the Property would contain 24 residential rooms between the first floor (14 rooms) and second floor (10 rooms). The Property will house up to 30 residents entered in the treatment program and up to 2 children under school age per resident (maximum 90 people). Applicant intends that the average resident would stay from 3 to 9 months. Residents would be subject to various restrictions. They will not be permitted to have visitors to the Property, nor can they independently leave the Facility for the day. If residents choose to voluntarily exit the rehabilitation program, they would be returned to their last known addresses. While residing at the Facility, residents will attend counseling and courses on life skills and management. Residents would be permitted to find employment for up to 20 hours per week in the final stage of their programs. Residents will not be permitted to have vehicles at the Property. No doctor or nurse, nor medical services will be provided at the Facility. Applicant will install security cameras outside and inside the Facility, except in residential rooms. The basement will be used for storage. Every aspect of the current building on the Property will remain as is.

Section 308.50 of the Township's Ordinance[1] states:

Uses Not Specifically Listed[2]-may be permitted under the following conditions:

a) Uses of the **same general character as** any of the uses authorized as [**p**]**ermitted** [**u**]**ses**, [s]pecial [e]xceptions, **or** [**c**]**onditional** [**u**]**ses** in the [z]oning [d]istrict **shall be allowed** if it is determined that the impact of the use on the environment and adjacent streets and properties is equal to or less than any use specifically listed in this [] Ordinance.

b) The use shall comply with **all applicable area** and bulk **regulations** and standards and criteria for comparable uses specifically listed in this [] Ordinance.

c) The use shall comply with the **Performance Standards** of this Ordinance.

d) The use shall be **consistent with the purpose statement for the [z]oning [d]istrict** and the **statement of Community Development Objectives of this Ordinance**.

Ordinance § 308.50 (bold emphasis added). Thus, the Ordinance requires that a conditional use be of the same general character as another use listed in a particular zoning district, and that the use **also** comply with regulations and standards for the comparable uses.

---

[1] Zoning Ordinance of Union Township, Ordinance No. 2009-05, enacted November 23, 2009.

[2] Section 306.10 of the Ordinance identifies the following as conditional uses in the CC District: "Churches ([Ordinance §] 308.1)[,]" "Planned Shopping ([Ordinance §] 310)[,]" "Communication Towers ([Ordinance §] 308.2)[,]" "Hospitals ([Ordinance §] 308.1)[,]" "Life Care Complexes ([Ordinance §] 308.25)[,]" "Senior Assisted Living Residences ([Ordinance §] 308.24)[,]" "Convenience Stores ([Ordinance §] 308.30)[,]" "Frozen Food Lockers with Retail ([Ordinance §] 308.32)[,]" "Medical and Dental Clinics ([Ordinance §] 308.4)[,]" "Schools - Public and Private ([Ordinance §] 308.l)[,]" "Nightclub ([Ordinance §] 308.48)[,]" "Banquet Hall ([Ordinance §] 308.48)[,]" "**Uses Not Specifically Listed** Subject to [Ordinance] **Section 308.50**[.]" Ordinance § 306.10 (emphasis added).

AEC - 3

This Court has declared that where a term in a zoning ordinance is ambiguous or undefined, the term must be construed broadly to allow the landowner the least restrictive use of his property. *See Balady Farms, LLC v. Paradise Twp. Zoning Hearing Bd.*, 148 A.3d 496 (Pa. Cmwlth. 2016). However, permitting the least restrictive use does not mean ignoring the zoning ordinance's mandates. Here, contrary to the Majority's assertion, the Board did broadly construe the Ordinance to allow Applicant the Property's least restrictive use.

The Board explained:

> [U]sing the broadest possible consideration for Applicant's request, other uses listed in the [CC] District that contain[] an element of residency and resident care are [l]ife [c]are [c]omplexes and [s]enior [a]ssisted [l]iving [r]esidences, which are all listed as [c]onditional [u]ses within the [CC] District. Motel/[h]otel, the current usage of the [] Property[,] is not a similar use as [m]otel/[h]otel is defined in the . . . Ordinance as[] "a building or group of buildings containing [i]ndividual rooms or apartment accommodations primarily for transient, each of which is provided with a parking space, and offered principally for rental and use by motor vehicle travelers." [Ordinance § 202.] Said definition is inherently different from the use proposed by Applicant.

Reproduced Record (R.R.) at 220a (emphasis added).

The Majority holds that Applicant satisfied its burden by demonstrating that the proposed use is permitted because the proposed use shares **some characteristics** of other permitted uses in the CC District. In fact, the Majority picks and chooses among various specific characteristics, selectively focusing on those few that it concludes are similar, while ignoring the clear and significant differences and

the overall nature of the uses that render the uses dissimilar. Further, it distinguishes similar uses based on relatively insignificant differences.[3] This Court has observed:

> *Merriam-Webster's Collegiate Dictionary* (11th ed. 2004) defines "**general**" as "concerned or dealing with **universal rather than particular aspects**[;] . . . relating to, determined by, or concerned **with main elements rather than limited details**." *Id*. at 520. Thus, [such language] does not require the [p]roposed [use] to have the "same character," but rather a similarity to other uses permitted by right in the [t]ownship.

*MarkWest Liberty Midstream & Res., LLC v. Cecil Twp. Zoning Hearing Bd.*, 102 A.3d 549, 558 (Pa. Cmwlth. 2014) (emphasis added).

The fact that a use shares **some** specific characteristics of a variety of different permitted uses in a zoning district is not equivalent to the use being of the same **general character** as a permitted use in the zoning district (i.e., a movie theater is not of the same general character as a restaurant, despite that they both sell food); *see e.g.*, *Metro Treatment of Pa., LP v. Zoning Hearing Bd. of Shenango* (Pa. Cmwlth. No. 424 C.D. 2017, filed Jan. 10, 2018)[4] (concluding that a **proposed methadone clinic** is **not** of the **same general character as a business or professional office** permitted in the zoning district).

Here, Applicant acknowledges that "the Pennsylvania Department of Drug and Alcohol Programs . . . [that] licenses the type of facility [Applicant] seeks to

---

[3] For example, the Majority concludes that the Facility, which is intended to provide residential drug and alcohol treatment, counseling sessions, and life skills and management courses, is more like an extended stay hotel - that provides no such services - than life care complexes or senior assisted living residences that do. It also disregards the similar functions of an Ordinance-defined *halfway house* based not upon the activities occurring therein, but upon the nature of the individuals participating.

[4] This Court's unreported memorandum opinions filed after January 15, 2008, may be cited "for [their] persuasive value, but not as binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). *Metro Treatment* is cited for its persuasive value.

operate . . . uses the term 'halfway house' to describe the type of drug and alcohol facility requested by [Applicant] in the Application."  Applicant Br. at 11.  The Ordinance defines *halfway house* as "a licensed home for inmates on release from more restrictive custodial confinement or initially placed in lieu of such more restrictive custodial confinement, **wherein supervision**, **rehabilitation**, **and counseling are provided to mainstream residents back into society**, **enabling them to live independently**."  Ordinance § 202 (emphasis added).  The Ordinance only permits halfway houses in the Township's M-2 Adult Entertainment Zoning District as a conditional use.  *See* Ordinance § 306.10.

Applicant intends that the Facility will engage in most of the functions and possesses the main elements of a halfway house *as defined in the Ordinance*.  The business is a "**licensed home** . . . wherein **supervision**, **rehabilitation**, and **counseling** are provided to **mainstream residents back into society**[.]"  Ordinance § 202 (emphasis added).  The Facility would house and serve the average resident from 3 to 9 months, during which they would attend **counseling and courses on life skills and management**.  Residents would be subject to various restrictions, including that they are not permitted to have visitors, vehicles, or to independently leave the Facility for the day.  Further, they would be permitted to engage in part-time employment only in their program's final stage.

Notwithstanding these overwhelming similar functions and main elements, the Majority discounts them and instead focuses on the purported "significances of the differences between the Facility . . . and a [h]alfway [h]ouse," i.e., that the Facility accepts only voluntary participants and those who have not been convicted of violent crimes or offenses, while halfway house participants are inmates on release.  *Angels Light Halfway House Derry, LLC v. Union Twp*. (Pa. Cmwlth. No.

AEC - 6

1086 C.D. 2024, filed September 16, 2025) (Maj. Op.), slip op. at 12. These "limited details" do not, however, relate to the "main elements" of the Facility's operations as a licensed home providing supervision, rehabilitation, and counseling. *MarkWest*, 102 A.3d at 558 (quoting *Merriam-Webster's Collegiate Dictionary* at 520).

> The Majority concludes that the proposed use:
>
> is of the same general character as several of the actual, authorized uses in the [CC] District . . . includ[ing] . . . an extended stay hotel,[5] another hotel that provides shorter duration stays, and businesses or medical offices that provide medical and support services, mental health and counseling services, and methadone to treat those addicted to opioids.

Maj. Op. at 12.

However, the Majority's assertion that the Facility will be similar to the Property's current extended stay motel/hotel use does not render the proposed use permissible. Importantly, neither the existing extended stay motel/hotel nor the Facility satisfy the Ordinance's *motel/hotel* definition, as the Facility is not "primarily for **transient**, . . . and offered **principally for rental** and use **by** motor vehicle **travelers**."[6]

---

[5] An extended stay motel/hotel is **not** a use permitted in the CC District.

[6] The Majority holds that the Board's reliance on the Ordinance's use of the word *transient* to distinguish the residents' use of the Facility from that of a motel/hotel was unfounded because transient means "'not lasting, enduring, or permanent; transitory,' 'lasting only a short time,' 'temporary' and 'staying only a short time[,]'" Maj. Op. at 11 (quoting https://dictionary.com/browse/transient), and "[t]he evidence shows that neither the existing use nor the Facility are intended to be used for 'lasting' or 'enduring' stays, and the stays at the Facility are 'temporary' and for 'a short time.'" *Id*.

However, Merriam-Webster.com's Dictionary defines "transient" as passing through or by a place **with only a brief stay** or sojourn[.]" *Id*. at https://www.merriam-webster.com/dictionary/transient (last visited Sept. 15, 2025) (emphasis added). The Facility's clients' 3- to 9-month periods of residence cannot be construed as "only . . . brief stay[s,]" and thus, the Facility is not substantially similar to a motel/hotel. *Id*.

The Majority also reasons:

AEC - 7

Ordinance § 202 (emphasis added). Additionally, the Majority's claimed similar uses do not impose significant living restrictions on patrons like those the Facility will mandate. Rather, those living restrictions will be similar to a halfway house. Furthermore, as the Board observed, the Ordinance's permitted *medical offices* definition specifically excludes the keeping of overnight patients on the premises, and the Ordinance's *professional offices* definition does not contemplate inpatient or residential living. The proposed use is more akin to a **residence** than a motel/hotel for the clients receiving rehabilitation treatment. Finally, the counseling service providers permitted in the CC District do not operate as residences and would be prohibited from doing so in the CC District.

Moreover, the Ordinance provides specific area and bulk regulations and other criteria and standards applicable to life care complexes and senior assisted living residences. *See* Ordinance § 308.23 (mandating required open space, imposing density area, width and yard regulations, parking, and buffer and screening requirements for life care complexes); *see also* Ordinance § 308.24 (imposing similar requirements for senior assisted living residences and senior independent living residences). As a means to avoid these mandates, the Majority rejects the Board's alternative conclusion that,

---

[T]he word "transient" in the definition of . . . [m]otel/[h]otel is modified by the word "**primarily**," ORDINANCE § 202 (emphasis added), not with the word "exclusively," meaning this requirement is **not absolute**. Any reliance on the language that the rooms are rented to motor travelers is similarly unconvincing because the Ordinance again uses a modifying word, "**principally**," *id.* (emphasis added), reflecting that this is not an absolute requirement.

Maj. Op. at 11. Problematically, the record evidence does not support this rationale because **none** of the proposed residents will be transient, and none of those residents will be permitted to use vehicles while staying at the Facility. The Facility's rules prohibit **all** residents from being motor vehicle travelers.

AEC - 8

apart from a halfway house, the Facility is closest in character to such permitted uses.[7] Rather than life care complexes or senior assisted living residences, the Majority inexplicably holds that the Facility, that is intended to provide residential drug and alcohol treatment, counseling sessions, and life skills and management courses, is more like an **extended stay hotel** - that provides no such services. The Majority claims: "The Facility's clients require **no** personal or <u>health-related care</u> and services or assistance with that care or those services." Maj. Op. at 14 (underline emphasis added). This statement disregards the Pennsylvania Supreme Court's acknowledgement that drug treatment is a form of mental health care. *See In re F.C. III*, 2 A.3d 1201 (Pa. 2010).

> The law is well established:
>
> In order to demonstrate that the applicant is entitled to the conditional use, **the applicant initially bears the burden of establishing that <u>the application complies with the objective standards and criteria</u> of the particular ordinance**. Satisfaction of the applicant's burden establishes a legislative presumption that the use is consistent with the health, safety, and welfare of the community. Once the applicant has satisfied this initial burden, the burden shifts to the objectors to rebut this presumption by establishing that the use will have a detrimental impact on the surrounding community.

*In re Richboro CD Partners, L.P.*, 89 A.3d 742, 745 (Pa. Cmwlth. 2014) (bold and underline emphasis added; citations omitted). Here, Applicant did not meet its burden of proof. Applicant did not show that the Facility's proposed use would be of the same

---

[7] Critically, Applicant did not demonstrate that the proposed use complied with applicable Ordinance area and bulk regulations and standards and criteria for comparable uses. *See* Ordinance § 308.50(b)-(c). The Board concluded that the Property's characteristics did not meet the minimum lot area, occupancy, or square footage requirements for permitted life care complexes or senior assisted living residences, exceeded the maximum impervious surface coverage, and lacked required buffering or screening. *See* R.R. at 220a-221a.

general character as a use in the CC District - "a similarity to other uses permitted by right in the [t]ownship." *MarkWest*, 102 A.3d at 558. In addition, Applicant did not demonstrate that the Facility's proposed use complied with applicable Ordinance area and bulk regulations and standards and criteria for comparable uses. *See* Ordinance § 308.50(b)-(c). Because the Board properly concluded that the Facility is of the same general character as a halfway house - or, alternatively, a life care complex or senior assisted living residence - which requires the Property to meet the minimum lot area, occupancy, or square footage requirements, and it exceeded the maximum impervious surface coverage and lacked required buffering or screening, I would reverse the trial court's order. *See* R.R. at 220a-221a.

        For all of the above reasons, I respectfully dissent.

_____
ANNE E. COVEY, Judge
